JERRY ALAN REESE, Plaintiff v. BROOKLYN VILLAGE, LLC and MECKLENBURG COUNTY, NORTH CAROLINA, Defendants

No. COA09-1412

(Filed 1 March 2011)

**1. Collateral Estoppel and Res Judicata— due process and equal protection claims previously litigated—constitutionality of session laws previously justiciable**

The trial court did not err by granting defendant county's motion for judgment on the pleadings based on *res judicata* and collateral estoppel. Plaintiff's claims for due process and equal protection had been previously litigated between plaintiff and the county, and a final decision on the merits dismissing these claims had been entered. Plaintiff should have raised the issues concerning the validity of the Brooklyn Village Contract and the county's actions in entering into the contract no later than *Reese III*. Further, the constitutionality of Session Laws 2000-65 and 2007-33 were justiciable at the time of *Reese I* and *Reese II*.

**2. Collateral Estoppel and Res Judicata— pleadings—dispositive orders—scope of prior litigation between parties**

The trial court did not err by denying plaintiff's motion to strike the county's defenses of *res judicata* and collateral estoppel, and by denying plaintiff's motion to strike the pleadings and dispositive rulings from *Reese I*, *Reese II*, and *Reese III*. The defenses were determinative of the issues. Further, the pleadings and dispositive orders were necessary for a proper determination of the scope of prior litigation between the parties within the context of the defenses.

**REESE v. BROOKLYN VILLAGE, LLC**

[209 N.C. App. 636 (2011)]

## 3. Declaratory Judgments— disposition of property—motion to dismiss—enforceability of agreements

The trial court did not err in a declaratory judgment action regarding the disposition of property by granting defendant company's motion to dismiss under N.C.G.S. § 1A-1, Rule 12(b)(6) because the agreements between defendants were lawful and enforceable.

Appeal by Plaintiff from order entered 21 May 2009 by Judge W. David Lee in Mecklenburg County Superior Court. Heard in the Court of Appeals 14 April 2010.

*Jerry Alan Reese, Plaintiff-Appellant; Pro Se.*

*K & L Gates LLP, by Kiran H. Mehta, for Defendant-Appellee Brooklyn Village, LLC.*

*Womble Carlyle Sandridge & Rice, PLLC, by James P. Cooney III and G. Michael Barnhill, for Defendant-Appellee Mecklenburg County.*

STEPHENS, Judge.

This appeal stems from the fifth of five lawsuits initiated by Plaintiff Jerry Alan Reese between 31 May 2007 and 10 October 2008 against Mecklenburg County, North Carolina ("County") and various other entities regarding a plan to redevelop the City Center of Charlotte, North Carolina ("Plan"). Plaintiff appeals the trial court's order denying his motion to strike,[1] granting the County's motion for judgment on the pleadings, and granting Defendant Brooklyn Village, LLC's ("Brooklyn Village") motion to dismiss. For the reasons stated herein, we affirm the order of the trial court.

### I. Procedural History

Plaintiff commenced this action against Defendants on 10 October 2008 by filing in the Superior Court of Mecklenburg County a "Motion to Commence Action by Issuance of Summons and Extension of Time to File Complaint." On 30 October 2008, Plaintiff filed a "Verified Complaint and Motion for Preliminary Injunction."

---

1. Plaintiff moved to strike the defenses of *res judicata* and collateral estoppel from the County's and Brooklyn Village, LLC's answers and to strike the pleadings and dispositive rulings from *Reese I, Reese II,* and *Reese III,* which were attached as exhibits to the County's answer.

REESE v. BROOKLYN VILLAGE, LLC

[209 N.C. App. 636 (2011)]

Plaintiff has previously filed four similar actions in Mecklenburg County:

1.  07 CVS 9456—*Reese v. The Charlotte-Mecklenburg Board of Education and County of Mecklenburg, North Carolina* (*"Reese I"*).

2.  07 CVS 9577—*Reese v. The City of Charlotte and Mecklenburg County, North Carolina* (*"Reese II"*).

3.  08 CVS 01—*Reese v. Mecklenburg County, North Carolina; Mecklenburg County Public Facilities Corporation; 300 South Church Street, LLC; and R.B.C. Corporation* (*"Reese III"*).

4.  08 CVS 6584—*Reese v. Mecklenburg County, North Carolina; and Knights Baseball, LLC* (*"Reese IV"*).

*Reese I and II* were designated as exceptional under General Practice Rule 2.1 and assigned by the Honorable Sarah E. Parker, Chief Justice of the North Carolina Supreme Court, to the Honorable Lindsay Davis for disposition. Judge Davis dismissed both suits in one order on 12 October 2007, granting defendants' motions for judgment on the pleadings. Plaintiff appealed to this Court. In separate opinions, this Court affirmed the trial court's order. *See Reese v. Charlotte-Mecklenburg Bd. of Educ.*, 196 N.C. App. 539, 676 S.E.2d 481, *disc. review denied*, 363 N.C. 656, 685 S.E.2d 105 (2009) (*"Reese I"*); *Reese v. City of Charlotte*, 196 N.C. App. 557, 676 S.E.2d 493, *disc. review denied*, 363 N.C. 656, 685 S.E.2d 105 (2009) (*"Reese II"*).

Reese *III and IV* were also designated as exceptional and assigned by Chief Justice Parker to the Honorable W. David Lee for disposition. In *Reese III*, Judge Lee entered an order granting defendants' motion for judgment on the pleadings and dismissing Plaintiff's fifth claim for declaratory judgment and injunctive relief for lack of jurisdiction. In *Reese IV*, Judge Lee entered an order granting defendants' motions for judgment on the pleadings. Plaintiff appealed to this Court, and this Court affirmed both orders. *See Reese v. Mecklenburg Cty.*, —— N.C. App. ——, 694 S.E.2d 453, *disc. review denied*, 364 N.C. 326, 700 S.E.2d 924 (2010) (*"Reese III"*); *Reese v. Mecklenburg Cty.*, —— N.C. App. ——, 685 S.E.2d 34 (2009), *disc. review denied*, 364 N.C. 242, 698 S.E.2d 653 (2010) (*"Reese IV"*).

On 3 December 2008, Plaintiff, the County, and Brooklyn Village filed a consent order for designation of the case *sub judice* as exceptional.

On 18 December 2008, Chief Justice Parker designated this case as exceptional and assigned Judge Lee to preside over the proceedings.

On 2 January 2009, the County filed an answer to Plaintiff's complaint and asserted the defenses of, *inter alia, res judicata* and collateral estoppel. In support of these defenses, the County attached Plaintiff's complaints and the trial court's orders in *Reese I, Reese II,* and *Reese III.* On 2 January 2009, Brooklyn Village filed a motion to dismiss. On 20 January 2009, Brooklyn Village filed an answer and asserted the same defenses as the County.

On 16 March 2009, Plaintiff moved to strike numerous portions of both the County's and Brooklyn Village's answers, including the defenses of *res judicata* and collateral estoppel. Plaintiff argued that the defenses were "insufficient as a matter of law based upon the record before the Court." Following a hearing on 26 March 2009, Judge Lee entered an order on 21 May 2009 denying Plaintiff's motion to strike, granting the County's motion for judgment on the pleadings, and granting Brooklyn Village's motion to dismiss.

From the trial court's order, Plaintiff appeals.

## II. Factual Background

In January 2007, the County entered into the Plan to redevelop Charlotte's ("City") City Center. Charlotte's City Center is divided into four quadrants by two intersecting streets, Trade Street and Tryon Street. These four quadrants are called "Wards." The Plan is designed "to achieve the specific government-related goals of development of an urban park, a mixed-use, residential-commercial community in Second Ward (Brooklyn Village), a baseball stadium in Third Ward, and sale of Spirit Square to fund infrastructure improvements for the baseball facility." *Reese II,* 196 N.C. App. at 563, 676 S.E.2d at 497. Under the Plan, the County acquired property in the City's Third Ward from an affiliate of Brooklyn Village upon which the County would develop an urban park. The County also agreed to lease land in the Third Ward to the Charlotte Knights Baseball Club upon which the club would build a baseball stadium. Furthermore, pursuant to the Plan, the County acquired two parcels of land, known as the Marshall Park Parcel and the Education Center Parcel (together, the "Second Ward Assemblage" or the "Property"), located in the Second Ward of the City. The Marshall Park and Education Center parcels are contiguous and contain approximately 11.34 acres of land. The County planned to develop an urban park on part of the Second Ward

Assemblage and to convey the remaining portion of the land to Brooklyn Village to allow Brooklyn Village to develop a mixed-use development in the City Center.

The County acquired the Marshall Park Parcel from the City by deed dated 17 December 2007. By his action in *Reese I*, Plaintiff attempted to challenge and block this acquisition on the ground that the County did not have the authority to convey the Marshall Park Parcel to Brooklyn Village. The County acquired the Education Center Parcel from the Charlotte-Mecklenburg Board of Education ("Board") by deed dated 13 December 2007. By his action in *Reese II*, Plaintiff attempted to challenge and block this acquisition on the ground that the County did not have the authority to convey the Education Center Parcel to Brooklyn Village.

On 18 December 2007, the Board adopted a Resolution Declaring Intent to Sell Property to Brooklyn Village ("Intent Resolution"). On 15 January 2008, the Board adopted a Resolution Authorizing the Sale of Property to Brooklyn Village ("Authorization Resolution") whereby the Board authorized the sale of a portion of the Second Ward Assemblage to Brooklyn Village pursuant to the terms and conditions of a proposed Agreement for Sale of County Property between the County and Brooklyn Village ("Brooklyn Village Contract" or "Contract"). The County and Brooklyn Village entered into the Brooklyn Village Contract on 17 January 2008. As of the date of the filing of the complaint in this action, neither party to the Brooklyn Village Contract had performed under or revoked the contract.

Plaintiff brings this action pursuant to the North Carolina Declaratory Judgment Act, N.C. Gen. Stat. § 1-253, *et seq.*, seeking judgment (1) declaring unlawful, nullifying, and setting aside the Brooklyn Village Contract, together with the Intent and Authorization Resolutions and (2) declaring Session Law 2000-65, as re-enacted and amended by Session Laws 2001-102, 2003-49, 2005-158, and 2007-33, unconstitutional on its face and as applied by the County in the disposition of the Property to Brooklyn.

*III. Discussion*

*A. Judgment on the Pleadings*

[1] Plaintiff first contends that the trial court erred in granting the County's motion for judgment on the pleadings based on *res judicata* and collateral estoppel. We disagree.

**REESE v. BROOKLYN VILLAGE, LLC**

[209 N.C. App. 636 (2011)]

## 1. Standard of Review

Rule 12(c) of the North Carolina Rules of Civil Procedure provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." N.C. Gen. Stat. § 1A-1, Rule 12(c) (2009). The purpose of Rule 12(c) is "to dispose of baseless claims or defenses when the formal pleadings reveal their lack of merit." *Ragsdale v. Kennedy*, 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974). A court has "inherent power to render judgment on the pleadings where the facts shown and admitted by the pleadings entitle a party to such judgment." *Erickson v. Starling*, 235 N.C. 643, 656, 71 S.E.2d 384, 393 (1952). In evaluating a Rule 12(c) motion, the court should grant the motion when a complaint does not allege "facts sufficient to state a cause of action or pleads facts which deny the right to any relief." *Robertson v. Boyd*, 88 N.C. App. 437, 440, 363 S.E.2d 672, 675 (1988). A trial court's grant of a motion for judgment on the pleadings is reviewed *de novo* on appeal. *Toomer v. Branch Banking & Trust Co.*, 171 N.C. App. 58, 66, 614 S.E.2d 328, 335, *disc. review denied*, 360 N.C. 78, 623 S.E.2d 263 (2005).

## 2. Res Judicata and Collateral Estoppel

Under the doctrine of *res judicata* (or "claim preclusion"), "a final judgment on the merits in a prior action will prevent a second suit based on the same cause of action between the same parties or those in privity with them." *Thomas M. McInnis & Assoc., Inc. v. Hall*, 318 N.C. 421, 428, 349 S.E.2d 552, 556 (1986). A prior judgment operates as an estoppel not only as to all matters actually determined or litigated in the proceeding, "but also as to all relevant and material matters within the scope of the proceeding which the parties, in the exercise of reasonable diligence, could and should have brought forward for determination." *Rodgers Bldrs., Inc. v. McQueen*, 76 N.C. App. 16, 22, 331 S.E.2d 726, 730 (1985), *disc. review denied*, 315 N.C. 590, 341 S.E.2d 29 (1986). In order to successfully assert the doctrine of *res judicata*, a litigant must prove all of the following essential elements:

> (1) a final judgment on the merits in an earlier suit, (2) an identity of the causes of action in both the earlier and the later suit, and (3) an identity of the parties or their privies in the two suits.

*Moody v. Able Outdoor, Inc.*, 169 N.C. App. 80, 84, 609 S.E.2d 259, 262 (2005).

Under the companion doctrine of collateral estoppel (or "issue preclusion"), "a final judgment on the merits prevents relitigation of issues actually litigated and necessary to the outcome of the prior action in a later suit involving a different cause of action between the parties or their privies." *McInnis*, 318 N.C. at 428, 349 S.E.2d at 557. Whereas *res judicata* estops a party or its privy from bringing a subsequent action based on the "same claim" as that litigated in an earlier action, collateral estoppel precludes the subsequent adjudication of a previously determined issue, even if the subsequent action is based on an entirely different claim. *Hales v. North Carolina Ins. Guar. Ass'n*, 337 N.C. 329, 333, 445 S.E.2d 590, 594 (1994). The two doctrines are complementary in that each may apply in situations where the other would not, and both advance the policy goals of "protecting litigants from the burden of relitigating previously decided matters and promoting judicial economy by preventing needless litigation." *Bockweg v. Anderson*, 333 N.C. 486, 491, 428 S.E.2d 157, 161 (1993).

### a. Plaintiff's Constitutional Claims for Due Process and Equal Protection

By Plaintiff's Fourth Claim for Relief, Plaintiff alleges that he and other parties "interested in submitting a proposal for the purchase and development of all or a portion of the Second Ward Assemblage had rights of due process and equal protection in the disposition process" and that "[t]he actions of Defendant County in purposefully and intentionally excluding Plaintiff and others similarly situated from participating in the process for the sale of the" Second Ward Assemblage violated Plaintiff's rights of due process and equal protection.

In *Reese I*, Plaintiff's Sixth Claim for Relief alleged that the County and the School Board violated Plaintiff's due process and equal protection rights under the United States Constitution and under Article I, Section 19 of the North Carolina Constitution "in that neither Plaintiff nor others similarly situated were afforded a process by which they could submit a proposal for the purchase of the Education Center Property."

In *Reese II*, Plaintiff's Fifth Claim for relief alleged that the County and the City violated Plaintiff's due process and equal protection rights under the U.S. Constitution and under Article I, Section 19 of the North Carolina Constitution "in that neither Plaintiff nor others similarly situated were afforded a process by which they could

submit a proposal for the purchase and development of the Marshall Park Property." Plaintiff alleged in both *Reese I* and *Reese II* that the County acquired the Education Center and Marshall Park Properties "to facilitate the conveyance of all or most of the property to Cornerstone/Spectrum for the Brooklyn Village project."

In the order dismissing the claims in *Reese I* and *Reese II*, Judge Davis held that Plaintiff had not established a cognizable liberty or property interest in the Marshall Park or Education Center Properties that would give rise to a claim for either procedural or substantive due process, and that Plaintiff had failed to allege that he had been treated differently than others with whom he was similarly situated.[2] In separate opinions in *Reese I* and *Reese II*, this Court specifically addressed Plaintiff's constitutional claims and, in affirming the dismissals, held that both the due process and equal protection claims were unfounded. *See Reese I*, 196 N.C. App. at 555, 676 S.E.2d at 492;[3] *Reese II*, 196 N.C. App. at 566, 676 S.E.2d at 499.[4]

In this case, Plaintiff's Fourth Claim for Relief alleges that the County has violated his due process and equal protection rights under the U.S. Constitution and under Article I, Section 19 of the North Carolina Constitution based upon what he alleges is the County's failure to permit him to submit a proposal for the purchase and development of all or a portion of the Second Ward Assemblage that the County is conveying to Brooklyn Village.

---

2. We agree with the trial court's finding herein that these legal and pleading deficiencies continue to exist in this case.

3. This Court explained:

> We agree with the trial court that plaintif complaint failed to allege anything more than a unilateral expectation of a property interest. Unilateral expectations are insufficient to demonstrate a property interest.

> As to plaintiff's claims of equal protection violations, these claims are grounded in his allegations that defendants abused their discretion in negotiating urban development. Having determined that those allegations were unfounded, we decline to address his equal protection claim.

*Reese I*, 196 N.C. App. at 555, 676 S.E.2d at 492 (internal citation omitted)

4. This Court explained:

> In his fifth claim, plaintiff asserts that the actions of defendants violated his rights of due process and equal protection under the United States and North Carolina Constitutions. Specifically, plaintiff contends that he was deprived of his "privilege of contracting." We disagree.

> This same argument was raised and discussed as plaintiff's Sixth Claim in our opinion in [*Reese* I]. For the reasons stated in that opinion, we hold that this argument is without merit.

*Reese II*, 196 N.C. App. at 566, 676 S.E.2d at 499.

Plaintiff alleges specifically in his complaint:

92. On at least four (4) occasions, Plaintiff advised Defendant County . . . of his interest in proposing a purchase and land development plan for the Second Ward Assemblage.

93. . . . [O]ther parties were interested in submitting a proposal for the purchase and development of all or part of the Second Ward Assemblage.

94. As a group, all parties such as Plaintiff interested in submitting a proposal for the purchase and development of all or a portion of the Second Ward Assemblage had rights of due process and equal protection in the disposition process as guaranteed by the United States Constitution and Article I, Section 19 of the Constitution of North Carolina.

Based upon a comparison of the claims in *Reese I* and *Reese II* with the claims in this case, it is evident that Plaintiff seeks to relitigate the same constitutional claims arising out of the same property transactions which were dismissed by Judge Davis' order. This he is plainly precluded by longstanding legal precedent from pursuing.

Plaintiff contends, however, that his argument in the present case is different from his claims in *Reese I and Reese II* because now he is attacking the County's *disposition* of the Second Ward Assemblage whereas in *Reese I and II* he was challenging the County's *acquisition* of the property. This is indisputably a distinction without a difference. Plaintiff is ultimately claiming a property interest in the Marshall Park and Education Center Properties and contesting the same land exchange, use, and purchase plan that is intended to further City and County economic development, urban revitalization, community development, and land use plans. Such plan, Plaintiff acknowledges, included the County's acquisition of the Education Center and Marshall Park Properties "to facilitate the conveyance of all or most of the property to Cornerstone/Spectrum for the Brooklyn Village project."

Accordingly, as Plaintiff's claims for due process and equal protection violations under the U.S. Constitution and Article I, Section 19 of the North Carolina Constitution have been previously litigated between Plaintiff and the County, and a final decision on the merits dismissing these claims has been entered, these claims are barred by the principles of *res judicata*.

REESE v. BROOKLYN VILLAGE, LLC

[209 N.C. App. 636 (2011)]

Plaintiff's argument is overruled.

### b. The Contract Between the County and Brooklyn Village

Plaintiff next asserts that the Brooklyn Village Contract is null, void, and of no legal effect because the County had no valid authority to enter into the Contract and because the "grossly inadequate net purchase price" established for the sale of the Property constitutes a manifest abuse of discretion by the County and the Board.

As noted, *supra*, under the doctrine of *res judicata*, a judgment operates as an estoppel not only as to all matters actually determined or litigated in the proceeding, "but also as to all relevant and material matters within the scope of the proceeding which the parties, in the exercise of reasonable diligence, could and should have brought forward for determination." *Rodgers Bldrs.*, 76 N.C. App. at 22, 331 S.E.2d at 730. "A party is required to bring forth the whole case at one time and will not be permitted to split the claim or divide the grounds for recovery; thus, a party will not be permitted, except in special circumstances, to reopen the subject of the arbitration or litigation with respect to matters which might have been brought forward in the previous proceeding." *Id.* at 23, 331 S.E.2d at 730.

*Reese III* was commenced on 2 January 2008, 10 months before Plaintiff filed the complaint in the present action, with the filing of a "Motion to Commence Action by Issuance of Summons and Extension of Time to File Complaint" under N.C. Gen. Stat. § 1A-1, Rule 3. This Rule 3 Motion was attached as Exhibit 10 to the County's Answer in the case *sub judice*. In his Rule 3 Motion, Plaintiff alleged that he required an extension of time within which to file his summons and complaint for the purpose of filing the following claims:

5. To seek a declaratory judgment declaring unlawful, nullifying and setting aside that certain Resolution Declaring Intent to Sell Property to Brooklyn Village, LLC adopted by the Mecklenburg County Board of Commissioners on December 18, 2007 (the "Brooklyn Village Resolution");[5]

6. To seek a declaratory judgment declaring unlawful, nullifying and setting aside that certain Agreement of Sale for County

---

5. The "Brooklyn Village Resolution" is referred to by Plaintiff in this case as the "Intent Resolution."

Property[6] by and between Mecklenburg County and Brooklyn Village, LLC signed by Brooklyn Village, LLC on December 6, 2007, attached to and made a part of the Brooklyn Village Resolution[.]

On 22 January 2008, Plaintiff filed his complaint in *Reese III* pursuant to his earlier Rule 3 Motion. In this complaint, Plaintiff specifically alleged:

20. On January 15, 2008, the Board [of County Commissioners of Mecklenburg County ("Board")] also adopted that certain Resolution Authorizing the Sale of Property to Brooklyn Village, LLC,[7] whereby the Board authorized the sale of certain public property located in the Second Ward area of Charlotte, North Carolina, pursuant to the terms and conditions of that certain Agreement of Sale for County Property between Defendant County and Brooklyn Village, LLC, a draft of which was included as an attachment for Item 21 of the January 15, 2008, Regular Meeting Agenda of the Board (hereafter referred to as the "Brooklyn Village Contract").[8]

21. Upon information and belief, the Assemblage Contract[9] and the Brooklyn Village Contract are inter-related and the consummation of the Assemblage Contract is a material consideration for the performance by Brooklyn Village, LLC of its obligations under the Brooklyn Village Contract.

Additionally, in language nearly identical to allegations made in *Reese I*, Plaintiff further alleged in his complaint in *Reese III*:

70. . . . [T]he Education Center was conveyed to Defendant County by [the Charlotte-Mecklenburg Board of Education ("CMS")] pursuant to the terms and conditions of that certain

---

6. The "Agreement of Sale for County Property" is referred to by Plaintiff in this case as the "Contract."

7. The "Resolution Authorizing the Sale of Property to Brooklyn Village, LLC" is referred to by Plaintiff in this case as the "Authorization Resolution."

8. The "Brooklyn Village Contract" is referred to by Plaintiff in this case as the "Contract."

9. In *Reese III*, the "Assemblage Contract" was entered into by Defendant County and Defendant 300 South Church Street whereby the County would purchase property located in the Third Ward, referred to as the "Assemblage," from 300 South Church Street.

Land Swap Interlocal Agreement between Defendant County and [CMS], dated on or around May 30, 2007, as amended.

71. Section 2.01(a) of the aforementioned Land Swap Interlocal Agreement provides that the conveyance of the Education Center property is need[ed] *"for an exchange with Cornerstone Real Estate Advisors . . .* [.]" Upon information and belief, the acquisition of the Education Center property by the County is not for public use by the County, but rather solely to assemble land for a private development to be known as Brooklyn Village.

Despite these allegations and Plaintiff's recitation in his Rule 3 Motion that he would be challenging the contracts and resolutions relating to the Brooklyn Village Contract, Plaintiff made no claims in *Reese III* contesting the validity of that Brooklyn Contract or the actions of the County in entering into the Contract. Instead, Plaintiff confined his challenges to the validity of the contract and resolutions concerning the County's acquisition of the "Assemblage" and the actions of the County in entering into those contracts.

Following the dismissal of *Reese III*, Plaintiff initiated this action attacking the Brooklyn Village Contract and the County's actions in entering into the Contract. In language almost identical to that used in Plaintiff's Complaint in *Reese III*, Plaintiff alleges in the present complaint:

15. On January 15, 2008, the Board also adopted that certain Resolution Authorizing the Sale of Property to Brooklyn Village, LLC, whereby the Board authorized the sale of certain real property pursuant to the terms and conditions of that certain Agreement for Sale of County Property between Defendant County and Brooklyn Village, LLC (hereinafter referred to as the "Contract"), a draft of which was included as an attachment for Item 21 of the January 15, 2008, Regular Meeting Agenda of the Board. This Resolution is hereafter referred to in this Complaint as the "Authorization Resolution."

Moreover, in language almost identical to that used in Plaintiff's Rule 3 Motion in *Reese III*, Plaintiff requests the following relief in this case:

1. The Court enter a declaratory judgment declaring unlawful, nullifying and setting aside that certain Resolution Declaring

Intent to Sell Property to Brooklyn Village, LLC adopted by the Mecklenburg County Board of County Commissioners on December 18, 2008.

. . . .

3. The Court enter a declaratory judgment declaring unlawful, nullifying and setting aside that certain Agreement of Sale for County Property between Defendant County and Brooklyn Village, LLC effective January 17, 2008, relating to the Property described in this Complaint.

At the 26 March 2009 hearing, Plaintiff acknowledged that in his Rule 3 motion, he stated that he would be "seeking declaratory judgment setting aside the Brooklyn Village resolution of December 18th," and "seek[ing] a declaratory judgment setting aside the agreement which had been signed by Brooklyn Village but not yet signed by the [C]ounty." However, Plaintiff informed the trial court that he "chose not to" bring forth these claims in *Reese III*, explaining, "[t]hat was my election, and under *Bockweg* I had that election that I could make and chose to make it . . . ."

In *Bockweg*, our Supreme Court stated:

the common law rule against claim-splitting is based on the principle that all damages incurred as the result of a single wrong must be recovered in one lawsuit. Where a plaintiff has suffered multiple wrongs at the hands of a defendant, a plaintiff may normally bring successive actions or, at his option, may join several claims together in one lawsuit.

*Bockweg*, 333 N.C. at 492, 428 S.E.2d at 161 (internal citations omitted).

As alleged by Plaintiff in his complaint in *Reese III*, the Brooklyn Village Contract concerning the Second Ward property was "inter-related" with the Assemblage Contract concerning the Third Ward property which Plaintiff challenged in *Reese III*. Moreover, as Plaintiff alleged in *Reese III*, the acquisition of the Third Ward property, the subject of the Assemblage Contract, was a material consideration for the conveyance of the Second Ward property, the subject of the Brooklyn Village Contract, to Brooklyn Village. As both conveyances are necessary for the challenged land "swap" to occur, the contracts and the County's actions in entering into them were a "single wrong" and, under *Bockweg*, any damages as a result of that wrong must be recovered in one lawsuit. *Id.*

Plaintiff also argues that "[i]t defies 'logic and common sense' to require Plaintiff to fully develop the facts and legal theories to a claim which has ripened into a justiciable controversy only five (5) days prior to the filing of the *Reese III* Complaint." However, since the filing of his first lawsuit on 31 May 2007, challenging actions by the School Board that he alleged had occurred on 30 May 2007, Plaintiff has repeatedly asserted that the property which the County acquired in the Second Ward from the City and the Board was to be used in a "swap" with Brooklyn Village for property in the Third Ward. Thus, at the time Plaintiff filed his complaint in *Reese III*, the claims concerning the validity of the Brooklyn Village Contract, and the actions of the County in entering into it, were known to Plaintiff and were available to be raised.

The claims concerning the validity of the Brooklyn Village Contract outlined in the Rule 3 Motion, and referred to in paragraphs 20 and 21 of the complaint in *Reese III*, are now the subject of Plaintiff's first, second, third, and sixth[10] claims for relief, and the portion of Plaintiff's fourth claim for relief in which he alleged that the County's failure to follow procedures which he claims exist for the private disposition of land by the County has amounted to a constitutional violation.

Plaintiff had actual knowledge of the issues concerning the validity of the Brooklyn Village Contract, and the County's actions entering into it, at the time he filed his complaint in *Reese III*. Moreover, Plaintiff represented to a judicial official in seeking an order extending time that he would raise these issues in *Reese III*. We conclude that Plaintiff should have raised the issues concerning the validity of the Brooklyn Village Contract, and the County's actions in entering into it, not later than *Reese III*. Accordingly, Plaintiff is now barred from doing so. Judge Lee correctly ruled that the *res judicata* and claim-splitting principles of our law require dismissal of these claims against the County.

### c. Session Law 2007-33[11]

Plaintiff next contends that Session Law 2007-33 is unconstitutional. Specifically, Plaintiff claims that Session Law 2007-33 is unconstitutional "on its face" because it contains no procedures similar to N.C.

---

10. There is no fifth claim for relief and Plaintiff has apparently identified his fifth claim as his sixth claim for relief.

11. Session Law 2000-65, as reenacted by Session Law 2003-49, as rewritten by Session Law 2005-158, and as reenacted by Session Law 2007-33 pertains to the disposition by negotiated sale of specific property in the County.

Gen. Stat. § 160A-266 to "safeguard the constitutional rights of parties interested in the purchase of public lands" or for "identifying and selecting the party to the negotiated private sale[,]" thus inviting "arbitrary conduct[.]" Plaintiff further claims that Session Law 2007-33 is unconstitutional "as applied" by the County in entering into the Brooklyn Village Contract because the law was applied "in such a manner as to intentionally and purposefully exclude Plaintiff from participating in the disposition process[.]"

Pursuant to N.C. Gen. Stat. § 160A-266,

(a) Subject to the limitations prescribed in subsection (b) of this section, and according to the procedures prescribed in this Article, a city may dispose of real or personal property belonging to the city by:

(1) Private negotiation and sale;

(2) Advertisement for sealed bids;

(3) Negotiated offer, advertisement, and upset bid;

(4) Public auction; or

(5) Exchange.

N.C. Gen. Stat. § 160A-266(a) (2009).[12] The limitations of subsection (b) include that real property generally may not be disposed of by private negotiation and sale. N.C. Gen. Stat. § 160A-266(b) (2009). However, Session Law 2007-33 grants the County the right to dispose of real property pursuant to a private sale "[w]hen the board of commissioners determines that a sale or disposition of property will advance or further any county or municipality-adopted economic development, transportation, urban revitalization, community development, or land-use plan or policy," and upon compliance with notice requirements and adoption of an authorizing resolution. *See* Session Laws 2000-65, 2003-49, 2005-158, and 2007-33 (the latter adopted 30 April 2007).

In *Reese I* and *Reese II*, Plaintiff challenged the actions of the County in the acquisition and proposed disposition of the Education Center and Marshall Park Properties, both of which are the subject of the Brooklyn Village Contract. Plaintiff argued that the sole reason the County was seeking to acquire the Properties was to

12. Pursuant to N.C. Gen. Stat. § 153A-176, the provisions of N.C. Gen. Stat. § 160A-266 apply to counties.

participate in a property exchange with Cornerstone/Spectrum and that the County, "absent special legislation," could not dispose of the Property by such privately negotiated sale pursuant to N.C. Gen. Stat. § 160A-266.

In response, the County tendered Session Law 2007-33, establishing its right to dispose of property in a privately negotiated sale. In his order dismissing Plaintiff's claims in *Reese I* and *Reese II*, Judge Davis noted that Plaintiff appeared to allege that the contemplated transfer of the Education Center and Marshall Park Properties to Cornerstone/Spectrum must comply with N.C. Gen. Stat. § 160A-266, which prohibits the County's disposition of real property by private negotiation and sale. However, Judge Davis explained that Plaintiff had "ignored" Session Laws 2000-65, 2003-49, 2005-158, and 2007-33 "which provide the County with authority to dispose of real property by private sale or disposition[.]" In this Court's opinion in *Reese II*, we noted that "Session Laws 2000-65 and 2007-33 specifically amended N.C. Gen. Stat. § 160[A]-266 as it applied to Mecklenburg County to authorize private sales" of real property and, thus, the contemplated land transfers did not violate N.C. Gen. Stat. § 160A-266. *Reese II*, 196 N.C. App. at 565, 676 S.E.2d at 498.

It is beyond reasonable debate that the operation of Session Law 2007-33 and its effect on Plaintiff's claims was at issue in *Reese I* and *Reese II* and that Session Law 2007-33 was part of the basis upon which Judge Davis denied Plaintiff's claims, which this Court affirmed. Under these circumstances, had Plaintiff desired to challenge the constitutionality of Session Law 2007-33 in connection with the acquisition and disposition of the Education Center Property or the Marshall Park Property, Plaintiff should have done so in *Reese I* and *Reese II* rather than delaying his challenge to that law or its use in the challenged transactions until the present suit. Accordingly, Plaintiff's argument is barred by the principles of *res judicata*, and the trial court did not err in dismissing Plaintiff's claim on that basis.

Nonetheless, Plaintiff argues that at the time he filed *Reese I* and *Reese II*, he could not have challenged the constitutionality of Session Law 2007-33 since the law governs the disposition of property and at the time of *Reese I* and *Reese II*, the County did not yet own the Property. Such argument is misguided.

"[I]n order for a court to have subject matter jurisdiction to render a declaratory judgment, an actual controversy must exist between the parties at the time the pleading requesting declaratory

relief is filed." *Sharpe v. Park Newspapers of Lumberton, Inc.*, 317 N.C. 579, 584, 347 S.E.2d 25, 29 (1986). "[I]n order 'to satisfy the jurisdictional requirement of an actual controversy, it is necessary that litigation appear unavoidable[.]' " *Id. (quoting Gaston Bd. of Realtors v. Harrison*, 311 N.C. 230, 234, 316 S.E.2d 59, 61 (1984). Thus,

> [t]he imminence and practical certainty of the act or event in issue, or the intent, capacity, and power to perform, create justiciability as clearly as the completed act or event, and is generally easily distinguishable from remote, contingent, and uncertain events that may never happen and upon which it would be improper to pass as operative facts.

*Id.* at 590, 347 S.E.2d at 32 (emphasis omitted).

In *Sharpe*, former newspaper owners contested the legality of a non-compete agreement with the new newspaper owner. Our Supreme Court found that no justiciable controversy existed because the former newspaper owners merely intended to compete with the newspaper business some day and did not have any specific plans to directly or indirectly compete. Unlike in *Sharpe*, at the time of *Reese I* and *Reese II*, the County and Cornerstone had a specific and documented Memorandum of Understanding for the disposition of the Property, which defined the land exchanges and the development of Brooklyn Village and an urban park. Additionally, the City and the Board of Education in the Interlocal Cooperation Agreement at issue in *Reese I* and *Reese II* specifically granted the County possession of the Property for the sole purpose of Cornerstone's developing the land into Brooklyn Village. Furthermore, this Court in *Reese II* specifically addressed Session Law 2000-65, as amended, in holding that the land trade agreement between the City and the County was lawful. *Reese II*, 196 N.C. App. at 565, 676 S.E.2d at 498. Thus, contrary to Plaintiff's assertion, the constitutionality of Session Laws 2000-65 and 2007-33 was justiciable at the time of *Reese I* and *Reese II*.

Plaintiff's argument is overruled.

### B. Plaintiff's Motions to Strike

[2] In light of our holdings above, we further hold that the trial court did not err in denying Plaintiff's motion to strike the County's defenses of *res judicata* and collateral estoppel and in denying Plaintiff's motion to strike the pleadings and dispositive rulings from *Reese I, Reese II*, and *Reese III* which were attached as exhibits to the County's answer.

Rule 12(f) of the North Carolina Rules of Civil Procedure allows the court to strike "from any pleadings any insufficient defense or any redundant, irrelevant, immaterial, impertinent, or scandalous matter.' " N.C. Gen. Stat. § 1A-1, Rule 12(f) (2009). Rule 12(f) motions are "addressed to the sound discretion of the trial court and its ruling will not be disturbed absent an abuse of discretion." *Carpenter v. Carpenter*, 189 N.C. App. 755, 759, 659 S.E.2d 762, 765 (2008) (citation and quotation marks omitted). "Matter should not be stricken unless it has no possible bearing upon the litigation. If there is any question as to whether an issue may arise, the motion [to strike] should be denied." *Id.* at 759, 659 S.E.2d at 766 (citation and quotation marks omitted).

Here, as the County's *res judicata* and collateral estoppel defenses are determinative of the issues decided above, it is axiomatic that they are not "insufficient" defenses which should have been stricken by the trial court. Moreover, as the pleadings from *Reese I*, *Reese II*, and *Reese III*, and the dispositive orders in those cases, are necessary to a proper determination of the scope of prior litigation between the parties within the context of the *res judicata* and collateral estoppel defenses, those materials are not redundant, irrelevant, immaterial, impertinent, or scandalous matter which should have been stricken by the trial court. Accordingly, we conclude that the trial court did not abuse its discretion in denying Plaintiff's motions to strike.

### C. Motion to Dismiss

[3] Plaintiff finally argues that the trial court erred in granting Brooklyn Village's motion to dismiss. We disagree.

"On a Rule 12(b)(6) motion to dismiss, the question is whether, as a matter of law, the allegations of the complaint, treated as true, state a claim upon which relief can be granted." *Allred v. Capital Area Soccer League, Inc.*, 194 N.C. App. 280, 282, 669 S.E.2d 777, 778 (2008) (citation and quotation marks omitted). "Under Rule 12(b)(6), a claim should be dismissed where it appears that plaintiff is not entitled to relief under any set of facts which could be proven." *Miller v. Nationwide Mut. Ins. Co.*, 112 N.C. App. 295, 299, 435 S.E.2d 537, 541 (1993), *disc. review denied*, 335 N.C. 770, 442 S.E.2d 519 (1994). "This occurs where there is a lack of law to support a claim of the sort made, an absence of facts sufficient to make a good claim, or the disclosure of some fact which will necessarily defeat the claim." *Id.* "This Court must conduct a *de novo* review of the pleadings to deter-

mine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct." *Craven v. SEIU COPE*, 188 N.C. App. 814, 816, 656 S.E.2d 729, 732 (2008) (citation and quotation marks omitted).

In this case, as Session Law 2000-65 modified by Session Law 2007-33 remains valid, the Intent Resolution and Authorization Resolution between the County and Brooklyn Village are lawful and enforceable. As the agreements are lawful, Plaintiff's claims against Brooklyn Village stating otherwise are claims for which no relief can be granted under any legal theory. The trial court thus properly granted Brooklyn Village's motion to dismiss.

For the foregoing reasons, the order of the trial court, in its entirety, is

AFFIRMED.

Judges HUNTER, ROBERT C. and GEER concur.