IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-651

Filed 20 August 2025

Cabarrus County, No. 23CVS001271-120

FARMERS & MERCHANTS BANK, Plaintiff,

v.

JEFFREY WAYNE HENLEY and wife,
BEVERLY HENLEY, Defendants.

Appeal by Defendants from order entered 16 February 2024 by Judge Matthew B. Smith in Cabarrus County Superior Court. Heard in the Court of Appeals 26 February 2025.

*Mills Law, P.A. by William L. Mills, III, for Defendant-Appellants.*

*Offit Kurman, P.A., by Robert B. McNeill and Zipporah B. Edwards, for Plaintiff-Appellee.*

CARPENTER, Judge.

Jeffrey Wayne Henley ("Defendant-Jeffrey") and Beverly Henley (collectively, "Defendants") appeal from the trial court's 16 February 2024 order (the "Order") granting the motion for judgment on the pleadings filed by Farmers & Merchants Bank ("Plaintiff") and dismissing Defendants' counterclaim and affirmative defenses. On appeal, Defendants argue the trial court erred by granting Plaintiff's motion for judgment on the pleadings and dismissing their counterclaim and affirmative

defenses. After careful review, we affirm the Order.

## I. Factual & Procedural Background

On 23 September 1998, Defendant-Jeffrey obtained approximately 3.5 acres of land in Cabarrus County, North Carolina from Timothy Alan Hurst. Four months later, on 11 January 1999, Defendant-Jeffrey obtained an additional 3.58 acres from Hurst. Then, on 9 April 1999, Hurst purported to grant Defendant-Jeffrey an easement (the "Purported Easement") of "not more than two (2.00) acres" over Hurst's remaining 81.99 acres of land. The description of the Purported Easement appears in the easement deed as follows:

> This is an easement for JEFFREY WAYNE HENLEY for the total of not more than two (2.00) acres from the parcel owned by TIMOTHY ALAN HURST, single, of Cabarrus County, State of North Carolina, the parcel being identified by "Parcel Identification Number 5508-01-6168-000, S/W side Morehead Road (SR 1300), 81.99 Acres, Township #2, 02 41 01300 in the property description block of Account #3658425, NBH Number 5508-03.
>
> This easement is granted for the sum of Ten (ten) (10) dollars and other valuable consideration, in hand paid and received, and accepted as value received.

In 2006, Defendants and Hurst entered into an agreement to collectively sell the 3.5 acres Defendants purchased from Hurst in 1998 and approximately 72 acres owned by Hurst (collectively, the "Property") to Cramer Mountain Development Company, LLC ("Cramer"). Agents for Defendants, Hurst, and Cramer executed special warranty deeds for the Property to an entity, Moorehead I, LLC

("Moorehead"), who provided Defendants and Hurst with a promissory note secured by a deed of trust against the Property ("Defendants' Deed of Trust"). Thereafter, Moorehead obtained a loan from Plaintiff evidenced by a promissory note and secured by the Property through a deed of trust ("Plaintiff's Deed of Trust"). On 13 March 2007, both deeds of trust were recorded against the Property.

On 1 June 2009, after Moorehead defaulted on its loan obligations, Plaintiff initiated a power of sale foreclosure proceeding against Moorehead. Plaintiff voluntarily dismissed the action without prejudice on 14 July 2009. Thereafter, Plaintiff initiated a second power of sale foreclosure proceeding on 7 December 2010 (the "Prior Action"). On 24 March 2011, following an order authorizing foreclosure, Defendants moved to intervene and for relief from judgment, which was granted by the assistant clerk of superior court. When Plaintiff appealed the intervention order to superior court, Defendants responded with an affidavit prepared by a forensic document examiner identifying certain "alterations" in Defendants' Deed of Trust. After the appeal was dismissed as interlocutory, Plaintiff noticed the foreclosure for re-hearing. Defendants filed another affidavit prepared by a different forensic document examiner, identifying "handwritten alterations of the page numbers, document number, and recording time" on Plaintiff's Deed of Trust. Eventually, after continued litigation, the trial court entered an order authorizing foreclosure on 10 October 2017.

On 20 October 2017, Defendants appealed to this Court arguing the foreclosure

was unauthorized because Plaintiff's Deed of Trust had been "materially altered." Put simply, Defendants challenged the validity of Plaintiff's Deed of Trust. This Court affirmed the trial court's order authorizing foreclosure.[1] In doing so, we determined the modifications to Plaintiff's Deed of Trust did not constitute "material alterations" and that Defendants "produced no evidence that the text or substance of [Plaintiff's Deed of Trust] was altered, nor is there evidence that [Plaintiff] was involved with the alterations."

After acquiring title to the Property on 18 August 2020, Plaintiff filed a complaint (the "Complaint") against Defendants on 19 April 2023 seeking to quiet title and obtain a declaratory judgment that no easement existed across any portion of the Property (the "Current Action"). Plaintiff attached its deed to the Property and Defendants' easement deed as exhibits to its Complaint. On 11 July 2023, Defendants answered the Complaint, asserting a counterclaim and two affirmative defenses. Specifically, Defendants asserted the affirmative defenses of laches and unclean hands, and in their counterclaim, requested that the trial court "define the rights and benefits [Defendants] enjoy under the easement." Defendants set forth nineteen factual allegations in support of their challenges to the Complaint. In sum, Defendants alleged Plaintiff's Deed of Trust was procured by an alleged "fraud." On

---

[1] The events giving rise to the foreclosure action under Plaintiff's Deed of Trust can be found in more detail in a previous opinion of this Court. *See In re Moorehead I, LLC*, 267 N.C. App. 690, 833 S.E.2d 254 (2019) (unpublished), *disc. rev. denied*, 374 N.C. 434, 841 S.E.2d 533 (2020).

11 December 2023, Plaintiff moved for judgment on the pleadings, arguing the Purported Easement was void for vagueness and that Defendants' affirmative defenses and counterclaim were barred by the doctrines of res judicata and collateral estoppel.

On 16 February 2024, following a hearing, the trial court entered the Order, concluding the Purported Easement was "void and of no effect." The trial court further declared that "no easement exists across any portion of the Property for Defendants' benefit." Finally, the trial court dismissed Defendants' affirmative defenses and counterclaim with prejudice. On 7 March 2023, Defendants filed written notice of appeal.

## II. Jurisdiction

This Court has jurisdiction under N.C. Gen. Stat. § 7A-27(b)(1) (2023).

## III. Issues

The issues are whether the trial court erred by granting Plaintiff's motion for judgment on the pleadings and dismissing Defendants' affirmative defenses and counterclaim.

## IV. Analysis

### A. Rule 12(c)

First, Defendants assert the trial court erred by granting Plaintiff's motion for judgment on the pleadings because the Purported Easement is valid despite its lack of specificity as to location and purpose. Plaintiff, on the other hand, argues the

Purported Easement is void because it is patently ambiguous. We agree with Plaintiff.

### 1. Standard of Review

"This Court reviews a trial court's order granting a motion for judgment on the pleadings de novo." *Sauls v. Barbour*, 273 N.C. App. 325, 332, 848 S.E.2d 292, 299 (2020) (citing *Toomer v. Branch Banking & Tr. Co.*, 171 N.C. App. 58, 66, 614 S.E.2d 328, 335 (2005)). "'Under a *de novo* review, [this Court] considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632–33, 669 S.E.2d 290, 294 (2008) (quoting *In re Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

Under Rule 12(c), " '[a]fter the pleadings are closed but within such time as to not delay the trial, any party may move for judgment on the pleadings.' " *Reese v. Brooklyn Vill., LLC*, 209 N.C. App. 636, 641, 707 S.E.2d 249, 253 (2011) (alteration in original) (quoting N.C. Gen. Stat. § 1A-1, Rule 12(c) (2009)). "The purpose of Rule 12(c) is 'to dispose of baseless claims or defenses when the formal pleadings reveal their lack of merit.'" *Id.* at 641, 707 S.E.2d at 253 (quoting *Ragsdale v. Kennedy*, 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974)). The trial court "should grant the motion when a complaint does not allege 'facts sufficient to state a cause of action or pleads facts which deny the right to any relief.'" *Id.* at 641, 707 S.E.2d at 253 (quoting *Robertson v. Boyd*, 88 N.C. App. 437, 440, 363 S.E.2d 672, 675 (1988)). In other words, judgment on the pleadings is proper "when all the material allegations of fact are

admitted in the pleadings and only questions of law remain." *Town of Bladenboro v. McKeithan*, 44 N.C. App. 459, 460, 261 S.E.2d 260, 261 (1980).

In ruling on a 12(c) motion, the trial court views the facts and permissible inferences in the light most favorable to the non-moving party, treating the well-pleaded factual allegations as true. *Terrell v. Laws. Mut. Liab. Ins. Co. of N.C.*, 131 N.C. App. 655, 659, 507 S.E.2d 923, 926 (1998) (citations omitted). The trial court considers only the pleadings, including any attached exhibits. *Id.* at 660, 507 S.E.2d at 926.

### 2. Easements

"An easement is a non-possessory right to make limited use of land owned by another without taking a part thereof." *Lester v. Galambos*, 258 N.C. App. 28, 33, 811 S.E.2d 661, 664–65 (2018) (citing *Adelman v. Gantt*, 251 N.C. App. 372, 377, 795 S.E.2d 798, 803 (2016)). Easements exist in two forms, appurtenant or in gross, *see Hinman v. Cornett*, 290 N.C. App. 30, 36, 891 S.E.2d at 572, 579 (2023) (citing *Shingleton v. State*, 260 N.C. 451, 454, 133 S.E.2d 183, 185 (1963)), and may be created in a variety of ways, including by express grant, *Tanglewood Prop. Owners' Ass'n, Inc. v. Isenhour*, 254 N.C. App. 823, 830, 803 S.E.2d 453, 459 (2017).

"An easement appurtenant is a right to use the land of another, i.e., the servient estate, granted to one who also holds title to the land benefitted by the easement, i.e., the dominant estate." *Brown v. Weaver-Rogers Assocs., Inc.*, 131 N.C. App. 120, 123, 505 S.E.2d 322, 324 (1998) (citing Webster, *Real Estate Law in North*

*Carolina* §§ 15–3, 15–4 (1994)). An easement appurtenant is "created for the purpose of benefitting particular land." *Nelms v. Davis*, 179 N.C. App. 206, 209, 632 S.E.2d 823, 825–26 (2006) (quotation marks and citations omitted). Conversely, an easement in gross does not benefit any dominant estate, but is a "personal license granted to use the land of another[.]" *See Brown*, 131 N.C. App. at 123, 505 S.E.2d at 324.

Express easements "must be 'sufficiently certain to permit the identification and location of the easement with reasonable certainty.'" *Wiggins v. Short*, 122 N.C. App. 322, 327, 469 S.E.2d 571, 575 (1996) (quoting *Adams v. Severt*, 40 N.C. App. 247, 249, 252 S.E.2d 276, 278 (1979)). In other words, "[w]hen an easement is created by deed . . . the description thereof 'must either be certain in itself or capable of being reduced to a certainty by a recurrence to something extrinsic to which it refers[.]'" *Allen v. Duvall*, 311 N.C. 245, 249, 316 S.E.2d 267, 270 (1984) (quoting *Thompson v. Umberger*, 221 N.C. 178, 180, 19 S.E.2d 484, 485 (1942)). No specific language is needed but " '[t]here must be language in the deed sufficient to serve as a pointer or a guide to the ascertainment of the location of the land.' " *Id.* at 270, 316 S.E.2d at 249 (emphasis omitted) (quoting *Thompson*, 221 N.C. at 180, 19 S.E.2d at 485).

Although the validity of an express easement does not turn on whether the description sufficiently states a purpose, courts typically look to the "*nature of the right* and the intention of the parties creating [the easement]" to determine whether a particular easement is appurtenant or in gross. *Brown*, 131 N.C. App. at 123, 505

S.E.2d at 325 (emphasis added and citations omitted); *Shingleton*, 260 N.C. at 455, 133 S.E.2d at 186 ("Whether an easement is appurtenant or in gross is controlled mainly by the nature of the right and the intention of the parties creating it, and must be determined by the fair interpretation of the grant [] creating the easement . . . ." (quotation marks and citation omitted)). Further, the easement's stated purpose aides in defining its scope. *See Swaim v. Simpson*, 120 N.C. App. 863, 864, 463 S.E.2d 785, 786–87 (1995). For this reason, the purpose of the easement " 'should be set forth precisely.' " *Id.* at 864, 463 S.E.2d at 786 (quoting I Patrick K. Hetrick & James B. McLaughlin, Jr., *Webster's Real Estate Law in North Carolina* § 15–9 (4th ed. 1994)).

Ultimately, an express easement will be void for vagueness when "there is such an uncertainty appearing on the face of the instrument itself that the court—reading the language in the light of all the facts and circumstances *referred to in the instrument*—is yet unable to derive therefrom the intention of the parties as to *what land was to be conveyed*." *Allen*, 311 N.C. at 249, 316 S.E.2d at 270 (second emphasis added) (citing *Thompson*, 221 N.C. at 180, 19 S.E.2d at 485).

### 3. Discussion

Defendants assert the Purported Easement is an easement in gross because it does not benefit a dominant estate but grants Defendants a personal right to use up to two acres of Hurst's land. Defendants further argue, without citation to authority, that an express easement in gross need not sufficiently describe the easement to be

valid. For the reasons outlined below, we conclude Defendants' Purported Easement, regardless of whether it is in gross or appurtenant, is void for vagueness.

As an initial matter, we reject Defendants' contention that express easements in gross are not subject to the same specificity requirements as express easements appurtenant. Easement deeds are, at bottom, contracts, *Lovin v. Crisp*, 36 N.C. App. 185, 188, 243 S.E.2d 406, 409 (1987), and contracts concerning real property must include a description of the land—the subject matter of the contract—to satisfy the statute of frauds, *see In re Thompson*, 253 N.C. App. 46, 49–50, 799 S.E.2d 658, 662 (2017); N.C. Gen. Stat. § 22-2 (2023). Moreover, easements in gross are disfavored and are less common than easements appurtenant. *See Gibbs v. Wright*, 17 N.C. App. 495, 498, 195 S.E.2d 40, 42–43 (1973) (explaining easements in gross are "not favored" and that easements "will never be presumed as personal when it may fairly be construed as appurtenant to some other estate"). As a result, our body of case law addressing the sufficiency of deeds granting express easements in gross is limited, unlike our case law addressing the sufficiency of deeds purporting to grant easements appurtenant. *See, e.g.*, *Brown*, 131 N.C. App. at 124, 505 S.E.2d at 325. Nevertheless, our precedent concerning specificity does not distinguish between types of express easements, and we discern no reason to depart from these rules in this context. In our view, it would defy logic to apply a less-exacting specificity standard to an express easement in gross when easements in gross are disfavored. *See Shingleton*, 260 N.C. at 455, 133 S.E.2d at 186. Therefore, express easements, whether in gross or

appurtenant, must describe the easement with sufficient certainty to be valid. *See Wiggins*, 122 N.C. App. at 327, 469 S.E.2d at 575.

Turning to the facts, Hurst purported to grant Defendant-Jeffrey an easement of "not more than two (2.0) acres" over Hurst's remaining 81.99 acres of land. The deed language of "*not more* than two (2.0) acres" is indefinite and ambiguous concerning the size and location of the Purported Easement. Although the deed uses the term "easement" and mentions the purported servient estate—Hurst's 81.99 acres of land—the deed wholly fails to indicate which two acres of Hurst's land are subject to the Purported Easement. By its terms, the easement deed seemingly grants Defendants an unfettered right to use up to any two of the 81.99 acres that constituted Hurst's land at the time of the conveyance. The description lacks sufficient specificity with respect to the Purported Easement's size and location.

Additionally, because the easement deed does not state a purpose, it is unclear what type of easement the parties intended to convey. *See Brown*, 131 N.C. App. at 123, 505 S.E.2d at 325. Even assuming the Purported Easement is an easement in gross, as Defendants suggest on appeal, the description of the Purported Easement is ambiguous because the easement cannot be ascertained with reasonable certainty. *See Wiggins*, 122 N.C. App. at 327, 469 S.E.2d at 575. Therefore, the deed is void because it is so uncertain "as to what land was to be conveyed." *See Allen*, 311 N.C. at 249, 316 S.E.2d at 270. Accordingly, the trial court did not err by granting

Plaintiff's motion for judgment on the pleadings where the pleadings disclosed that no valid easement existed.

## B.  Counterclaim & Affirmative Defenses

Next, Defendants assert the trial court erred by dismissing their counterclaim and affirmative defenses.  We disagree.

### 1.  Declaratory Judgment

Defendants assert the trial court erred by dismissing their counterclaim for declaratory judgment.  This argument is without merit.  In the Complaint, Plaintiff requested that the trial court declare that "no easement exists across any portion of the Property for Defendants' benefit, [and] that the Purported Easement is void and of no effect[.]"  In response, Defendants requested that the trial court "define the rights and benefits [Defendants] enjoy under the [e]asement[]" and called upon the trial court to "[f]ind that Defendants have and enjoy rights under the easement."

By declaring in the Order that "no easement exists across any portion of the Property for Defendants' benefit," the trial court resolved the parties' competing demands for declaratory judgment.  The trial court determined the Purported Easement was void and of no effect and that Defendants, as a result, did not enjoy any rights under the Purported Easement.  Therefore, the trial court's dismissal of Defendants' counterclaim for declaratory judgment was proper.

### 2.  Laches and Unclean Hands

Defendants also assert the trial court erred by dismissing their affirmative

defenses of laches and unclean hands based on the doctrines of res judicata and collateral estoppel.

Before analyzing the merits of Defendants' argument, we first determine which doctrine applies to this case: res judicata or collateral estoppel. "Under the doctrine of *res judicata*, or claim preclusion, 'a final judgment on the merits in a prior action will prevent a second suit based on the same cause of action between the same parties or those in privity with them.'" *State ex rel. Tucker v. Frinzi*, 344 N.C. 411, 413, 474 S.E.2d 127, 128 (1996) (quoting *Thomas M. McInnis & Assoc. v. Hall*, 318 N.C. 421, 428, 349 S.E.2d 552, 556 (1986)). "A final judgment generally is one which ends the litigation on the merits." *Duncan v. Duncan*, 366 N.C. 544, 545, 742 S.E.2d 799, 801 (2013) (quotation marks and citations omitted). "Under the companion doctrine of collateral estoppel . . . or 'issue preclusion,' the determination of an issue" in a prior action "precludes the relitigation of that issue in a later action, provided the party against whom the estoppel is asserted enjoyed a full and fair opportunity to litigate that issue in the earlier proceeding." *Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 15, 591 S.E.2d 870, 880 (2004) (citations omitted).

The primary difference between the two doctrines is res judicata precludes a party "from bringing a subsequent action based on the '*same claim*' as that litigated in an earlier action," while collateral estoppel "precludes the subsequent adjudication of a previously determined *issue*, even if the subsequent action is based on an entirely different claim." *Id.* at 15, 591 S.E.2d at 880 (emphasis added) (citation omitted).

Though distinct, both doctrines "advance the twin policy goals of 'protecting litigants from the burden of relitigating previously decided matters and promoting judicial economy by preventing needless litigation.'" *Id.* at 15–16, 691 S.E.2d at 880 (quoting *Bockweg v. Anderson*, 333 N.C. 486, 491, 428 S.E.2d 157, 161 (1993)).

The two actions relevant here are: the Prior Action—Plaintiff's 7 December 2010 power of sale foreclosure proceeding; and the Current Action—Plaintiff's 19 April 2023 quiet title and declaratory judgment action. In the Prior Action, Defendants submitted an affidavit to the trial court prepared by a forensic document examiner in support of their contention that the page numbers, document number, and recording time for Plaintiff's Deed of Trust had been previously altered. On 10 October 2017, the trial court, having considered Defendants' affidavit and corresponding arguments, authorized foreclosure. Thereafter, Defendants appealed to this Court, arguing that Plaintiff's Deed of Trust was unenforceable due to "material alterations." Specifically, on appeal, Defendants contended the alterations "raised questions as to the validity of [Plaintiff's] Deed of Trust[.]"

In the Current Action, Defendants alleged Plaintiff's Deed of Trust was invalid due to "fraud." Because our preclusion analysis concerns a particular issue—the validity of Plaintiff's Deed of Trust—not an entire claim, issue preclusion is the applicable doctrine in the instant case. *See Whitacre P'ship*, 358 N.C. at 15, 591 S.E.2d at 880.

Here, Defendants asserted two affirmative defenses: laches and unclean

hands. "The doctrine of laches is designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Stratton v. Royal Bank of Canada*, 211 N.C. App. 78, 88–89, 712 S.E.2d 221, 230 (2011) (quotation marks and citation omitted). Put simply, the doctrine of laches operates as a bar where the plaintiff has delayed seeking relief. *See Phoenix Ltd. P'ship of Raleigh v. Simpson*, 201 N.C. App. 493, 506, 688 S.E.2d 717, 726 (2009). To establish laches the asserting party mush show:

> (1) the claimant knew of the existence of the grounds for the claim; (2) the delay was unreasonable and must have worked to the disadvantage, injury or prejudice of the party asserting the defense; [and] (3) the delay of time has resulted in some change in the condition of the property or in the relations of the parties; however, the mere passage of time is insufficient to support a finding of laches.

*Town of Cameron v. Woodell*, 150 N.C. App. 174, 177, 563 S.E.2d 198, 201 (2002) (citation omitted). " 'The doctrine of clean hands is an equitable defense which prevents recovery where the party seeking relief comes into court with unclean hands.' " *Collier v. Bryant*, 216 N.C. App. 419, 430, 719 S.E.2d 70, 79 (2011) (quoting *Ray v. Norris*, 78 N.C. App. 379, 384, 337 S.E.2d 137, 141 (1985)).

In support of their affirmative defenses, Defendants, once again, dispute the validity of Plaintiff's Deed of Trust. Although Defendants alleged "fraud" instead of "material alterations," the factual allegations reveal that Defendants' primary contention is not meaningfully different from that raised and rejected in the Prior

Action.   Specifically, Defendants alleged the following, in pertinent part, in their

answer to the Complaint:

> 26. As a part of the fraud a deed of trust encumbering the Property was recorded on March 13, 2007 by a paralegal working for the attorney representing the Plaintiff naming that attorney as trustee and the defendants as beneficiary at 4:24 PM as document number 8880 Deed Book 7393 page 19.
>
> 27. The same day the deed of trust at the root of the Plaintiff's title naming the Plaintiff as beneficiary was recorded 4:25 PM as document number 8881 Deed Book 7393 page 20.
>
> 28. The paralegal returned to the office of the attorney with copies of the deeds of trust showing the recording as described in paragraphs 26 and 27.
>
> 29. The defendants are informed and believe that the attorney then contacted Fletcher L. Hartsell, Jr. who was then a licensed attorney practicing in Concord, NC and requested that he ask the Register of Deeds to *reverse the order of recording of the two deeds of trust*.
>
> 30. The defendants are informed and believe that early on the morning of March 14, 2027 (sic) Fletcher L. Hartsell, Jr. visited the then Register of Deeds for Cabarrus County, Linda F. McAbee in her office and prevailed upon her to *alter the deeds of trust* so that they appear in the public record as shown in Exhibits A and B hereto attached.

Defendants' allegations rely upon the same set of facts as those giving rise to

their "material alteration" argument.   Like the Prior Action, Defendants contend

Plaintiff's Deed of Trust is invalid due to suspicious behavior regarding how and when

the parties' competing deeds of trusts were recorded.   Indeed, Defendants contended

that "Plaintiff now seeks to gain the final full measure of benefit from the fraud by depriving [Defendants] of the rights and benefits they enjoy under the Easement." This issue, however, was previously raised and rejected by a trial court and this Court in the Prior Action, resulting in a final judgment. *See Duncan*, 366 N.C. at 545, 742 S.E.2d at 801. In the Prior Action, Defendants produced affidavits referencing the alterations made in both deeds of trust. The trial court nevertheless authorized foreclosure, implicitly rejecting Defendants' contention that Plaintiff's Deed of Trust was invalid on the merits.

Accordingly, Defendants' affirmative defenses, predicated upon the same assertion, are barred by the doctrine of issue preclusion. *See Whitacre P'ship*, 358 N.C. at 15, 591 S.E.2d at 880. Thus, the trial court did not err by dismissing Defendants' affirmative defenses.

## V. Conclusion

The trial court did not err by granting Plaintiff's motion for judgment on the pleadings and dismissing Defendants' affirmative defenses and counterclaim. Accordingly, we affirm the Order.

AFFIRMED.

Judges ARROWOOD and STADING concur.