RODGERS BUILDERS, INC. v. JAMES DOUGLAS McQUEEN; McQUEEN PROPERTIES, LTD., A CORPORATION; AND PARKHILL ASSOCIATES, A LIMITED PARTNERSHIP

No. 8426SC1261

(Filed 16 July 1985)

1. **Arbitration and Award § 7; Judgments § 35.1— judgment on arbitration award—res judicata**

    The doctrine of *res judicata* applies to a judgment entered on an arbitration award as it does to any other final judgment.

2. **Arbitration and Award § 7; Judgments § 37.3— judgment on arbitration award —res judicata—issues that could have been decided**

    A judgment entered on an arbitration award, like any other final judgment, operates as an estoppel not only as to all matters actually determined or litigated in the prior proceeding, but also as to all relevant and material matters within the scope of the proceeding which the parties, in the exercise of reasonable diligence, could and should have brought forward for determination.

Rodgers Builders v. McQueen

3. **Arbitration and Award § 1— claims based on tortious conduct or unfair trade practices—claims for punitive damages—no legislative bar to arbitration**

There is no legislative bar to arbitration of claims based on tortious conduct or unfair and deceptive trade practices and claims for punitive damages as long as they arise out of or relate to a contract providing for arbitration or its breach. G.S. 1-567.2(a).

4. **Arbitration and Award § 1— scope of agreement to arbitrate**

Because the duty to arbitrate is contractual, only those disputes which the parties agreed to submit to arbitration may be so resolved. To determine whether the parties agreed to submit a particular dispute or claim to arbitration, the appellate court must look at the language in the agreement, *viz.*, the arbitration clause, and ascertain whether the claims fall within its scope, and in so doing, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.

5. **Arbitration and Award § 5— scope of arbitration agreement—tort or contract claims**

A contract provision for arbitration of "All claims, disputes and other matters in question between the Contractor and the Owner arising out of, or relating to, the Contract Documents or the breach thereof" was sufficiently broad to include any claims which arise out of or are related to the contract or its breach, regardless of the characterization of the claims as tort or contract.

6. **Arbitration and Award § 5— claims for fraud, unfair trade practices and negligent misrepresentation—within scope of arbitration clause**

A construction contractor's claims against the owner to recover compensatory and punitive damages for fraud, unfair trade practices and negligent misrepresentation bore a sufficiently strong relationship to the contract or its breach so that they fell within the scope of an arbitration clause in the contract.

7. **Arbitration and Award § 5— arbitrability of unfair trade practices claim**

A construction contractor's claim against the owner for unfair and deceptive trade practices was arbitrable where the claim concerns essentially a private dispute and appears asserted merely to bolster and supplement the remainder of plaintiff's claims and to increase the amount of damages recoverable.

8. **Arbitration and Award § 5— arbitrability of claims for punitive damages**

Claims for punitive damages are arbitrable when they fall within the scope of an arbitration agreement.

9. **Arbitration and Award § 7— person not party to arbitration bound by award**

A person who was not named as a party to arbitration was bound by the judgment on the arbitration award where he had a strong interest in the determination of issues in the arbitration proceeding because of his ownership interest in two parties to the arbitration, and he was an active and controlling participant in the arbitration.

**10. Arbitration and Award § 7; Judgments § 37.6— res judicata—claims barred by judgment on arbitration award**

> A construction contractor's claims against the owner to recover compensatory and punitive damages for fraud, unfair trade practices and negligent misrepresentation were barred by *res judicata* due to a judgment entered on an arbitration award where the claims were within the scope of an arbitration agreement between the parties, the claims concerned essentially the same subject matter, the same issues and the same parties as the prior arbitration proceeding, and the claims were or could have been asserted and determined in the arbitration proceeding.

APPEAL by plaintiff from *Snepp, Judge.* Judgment entered 27 August 1984 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 17 May 1985.

This is a civil action wherein plaintiff construction company seeks to recover compensatory and punitive damages from defendants for fraud, unfair and deceptive trade practices, and negligent misrepresentation. From the entry of summary judgment for defendants, plaintiff appeals.

*Casey, Bishop, Alexander & Murphy, by Hugh G. Casey, Jr., for plaintiff appellant.*

*Jones, Hewson & Woolard, by Harry C. Hewson and Hunter M. Jones, for defendant appellees.*

WHICHARD, Judge.

On 6 December 1982 plaintiff entered into a written contract with defendant McQueen Properties, Ltd., a corporation apparently controlled by defendant James McQueen, in which plaintiff agreed to construct a multi-unit housing project on land purportedly owned by McQueen Properties. The contract contains an arbitration clause which provides as follows, in relevant part: "All claims, disputes and other matters in question between the Contractor [plaintiff] and the Owner [McQueen Properties] arising out of, or relating to, the Contract Documents or the breach thereof, . . . shall be decided by arbitration . . . ." As plaintiff neared completion of the project, a dispute arose concerning plaintiff's alleged failure to complete the project within the time specified in the contract and McQueen Properties' subsequent refusal to pay a draw request in the amount of $177,000 submitted by plaintiff.

Plaintiff demanded arbitration of the dispute. In its demand plaintiff indicated that it sought the $177,000 due on the draw request, the owner's signature on change orders, overhead and profit in allowances, and the "[r]esolution of all claims arising under the contract." An arbitration hearing was scheduled for 14 December 1983.

Thereafter plaintiff learned that Parkhill Associates, a limited partnership in which James McQueen and McQueen Properties are the general partners, was in fact the title owner of record of the land on which the housing project had been built. Plaintiff thereupon filed an amendment to its demand for arbitration joining Parkhill Associates as an additional party. In its amendment plaintiff indicated that it sought damages in the amount of $611,326.24 caused by the owner's indecision and interference with work on the project. It is clear from the record that the "Owner" referred to in the amendment was James McQueen. Because of the late addition of Parkhill Associates as a party to the arbitration, the hearing was continued until January 1984 at the request of defendants' attorneys.

Plaintiff then instituted the present action for money owed for labor and materials, and for fraud and unfair and deceptive trade practices. Plaintiff requested that the court delay trial and entry of judgment in the action until the outcome of the arbitration. In February 1984 an award was entered "in full settlement of all claims submitted to [the] arbitration" which directed McQueen Properties and Parkhill Associates, jointly and severally, to pay plaintiff $407,259. The award was confirmed by the superior court and entered as a judgment.

Thereafter plaintiff filed an amended complaint in the present action seeking compensatory and punitive damages for fraud, unfair and deceptive trade practices, and negligent misrepresentation. In Count I of the amended complaint plaintiff set forth allegations of fraud which may be summarized as follows: In December 1980 McQueen Properties deeded the property on which the housing project was built to James McQueen. On 23 November 1982 James McQueen deeded the property to Parkhill Associates. As part of the latter transaction Parkhill Associates executed deeds of trust to First Union National Bank and James McQueen. On both deeds of trust James McQueen signed on be-

half of Parkhill Associates. On 6 December 1982 James McQueen, acting individually and as agent for McQueen Properties, falsely represented to plaintiff that McQueen Properties was the owner of the property on which the housing project was to be built. Plaintiff entered the contract with McQueen Properties for the construction of the project in reliance on James McQueen's false representation. The misrepresentation materially deceived plaintiff and resulted in the late joining of Parkhill Associates as a party to the arbitration, which delayed the arbitration. This delay damaged plaintiff by causing it to incur additional interest on loans obtained because its draw requests had not been paid. The aforesaid actions by defendants were committed knowingly and willfully with the intent to deceive plaintiff and did in fact materially deceive plaintiff in its dealings with defendants. Such actions justify punitive damages of one million dollars, the amount plaintiff believes James McQueen expects to realize as profit from the housing project.

Plaintiff further alleged in Count I: James McQueen and Parkhill Associates attempted to convey condominium units in the project without informing purchasers that the units were subject to plaintiff's lien. James McQueen, acting as partner, signed warranty deeds conveying six condominium units even though he knew plaintiff had recorded a claim of lien in the amount of $439,138.79 on the property. The warranty in the above deeds was a misrepresentation. In November 1983 McQueen Properties, through its attorneys, fraudulently and without plaintiff's consent entered a cancellation of plaintiff's lien on the judgment docket. The aforesaid actions were done to defraud plaintiff as a creditor of Parkhill Associates. In December 1983 McQueen's lawyers served a "Motion To Discharge Lien" on plaintiff in a case which they knew had been voluntarily dismissed and did so on behalf of and at the direction of defendants in an attempt to dissuade plaintiff from bringing a lawsuit to perfect its claim of lien. Service of the above-mentioned motion constitutes abuse of process by defendants and was a deceit.

In Count II of the amended complaint plaintiff realleged and incorporated the allegations in Count I and further alleged the following as an unfair and deceptive practices claim: Parkhill Associates placed the deed of trust in favor of James McQueen on record in November 1982 to enable McQueen to foreclose and sell

the property on which the housing project was built in the event plaintiff attempted to enforce a judgment, and did so to defraud and defeat the claims of creditors in violation of G.S. 39-15. James McQueen repeatedly interfered with and delayed work on the housing project and was abusive to plaintiff's employees and the subcontractors working on the project. Such actions by James McQueen were part of his design to delay the project so that he could assert a spurious claim for damages against plaintiff in an attempt to "bully" plaintiff into foregoing sums owed it for its work on the project. Defendants' acts injured plaintiff by forcing it to expend additional labor, material, and overhead, which finally resulted in a cost overrun on the project of approximately $300,000. The above acts of James McQueen were deceptive and in violation of G.S. 75-1.1.

In Count III plaintiff realleged and incorporated the allegations of the previous counts, and alleged that defendants' false representation that McQueen Properties was the owner of the property constitutes substantial and material negligent misrepresentation upon which plaintiff relied to its detriment, and that such misrepresentation by defendants was grossly negligent and committed with reckless disregard of plaintiff's rights and interests and entitles plaintiff to punitive damages.

Plaintiff alleged that as a result of defendants' acts it suffered general and special damages of one million dollars each and that it was entitled to punitive damages of one million dollars. Plaintiff indicated that its special damages were attributable to: interest incurred on loans it was forced to obtain because of defendants' refusal to pay draw requests; the decline in its financial worth and impairment of its bonding capacity caused by the outstanding loans; diversion of labor and materials which could have been used on other jobs to the housing project; lost profits resulting from the impairment of its capital; corresponding loss of business; and cost overrun in the amount of $300,000. Plaintiff sought to recover the above damages, as well as its costs and attorneys' fees, and requested that the court set aside as void the deed of trust executed by Parkhill Associates in favor of James McQueen. Plaintiff further requested that any damages assessed against defendants be trebled in accordance with G.S. 75-16.

In response defendants filed a motion for summary judgment based on numerous documents including the amended complaint, the judgment entered on the arbitration award, and a transcript of portions of the arbitration proceeding. The superior court granted the motion, finding "that there is no genuine issue as to any material fact which is necessary to the consideration of this motion and the entry of summary judgment in favor of the defendants and that the defendants are entitled to judgment as a matter of law." Plaintiff appeals.

Plaintiff contends the court erred in granting summary judgment for defendants. G.S. 1A-1, Rule 56(c) permits summary judgment if the materials submitted to the court show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. The materials submitted in support of the motion here show that the claims asserted in the present action arise out of the dispute which was submitted to arbitration. Thus this appeal presents the question of whether defendants were entitled to summary judgment on the ground that plaintiff's claims are barred under the doctrine of res judicata.

[1] The doctrine of res judicata applies to a judgment entered on an arbitration award as it does to any other final judgment. *See* M. Domke, *Domke on Commerical Arbitration* Sec. 39:04, at 510 (rev. ed., Wilner 1984); *see also* G.S. 1-567.15. Thus, a judgment entered on an arbitration award is conclusive of all rights, questions, and facts in issue, as to the parties and their privies, and as to them constitutes an absolute bar to a subsequent action arising out of the same cause of action or dispute. *See* Domke, *supra; see also King v. Grindstaff*, 284 N.C. 348, 355, 200 S.E. 2d 799, 804 (1973).

[2] Such a judgment, like any other final judgment, operates as an estoppel not only as to all matters actually determined or litigated in the prior proceeding, but also as to all relevant and material matters within the scope of the proceeding which the parties, in the exercise of reasonable diligence, could and should have brought forward for determination. *See In re Trucking Co.*, 285 N.C. 552, 560, 206 S.E. 2d 172, 178 (1974); *King v. Grindstaff*, 284 N.C. at 356, 200 S.E. 2d at 805; *Bruton v. Light Co.*, 217 N.C. 1, 7, 6 S.E. 2d 822, 826 (1940); *see also James L. Saphier Agency,*

*Inc. v. Green,* 190 F. Supp. 713, 719 (S.D.N.Y. 1961), *aff'd,* 293 F. 2d 769 (1961). A party is required to bring forth the whole case at one time and will not be permitted to split the claim or divide the grounds for recovery; thus, a party will not be permitted, except in special circumstances, to reopen the subject of the arbitration or litigation with respect to matters which might have been brought forward in the previous proceeding. *In re Trucking Co.,* 285 N.C. at 560, 206 S.E. 2d at 178; *Bruton v. Light,* 217 N.C. at 7, 6 S.E. 2d at 826. The scope of an arbitration award and its res judicata effect are matters for judicial determination; therefore, whether plaintiff's claims are barred was for the superior court to determine. *See Rembrandt Indus., Inc. v. Hodges International, Inc.,* 344 N.E. 2d 383, 384 (N.Y. 1976); *cf., Development Co. v. Arbitration Assoc.,* 48 N.C. App. 548, 552, 269 S.E. 2d 685, 687 (1980), *disc. rev. denied,* 301 N.C. 719, 274 S.E. 2d 227 (1981) (whether arbitration is barred by the res judicata or collateral estoppel effect of a prior judgment is a matter for judicial determination).

Plaintiff contends that its claims are not barred by the judgment entered on the arbitration award because they could not or should not have been brought forward in the arbitration proceeding. Plaintiff argues that its claims are not within the scope of the arbitration clause contained in its contract with McQueen Properties and are not arbitrable because the claims are based on tortious conduct or unfair and deceptive practices and because plaintiff seeks to recover punitive damages.

[3] Our courts have not previously addressed the arbitrability of claims based on tortious conduct or unfair and deceptive practices, or of claims for punitive damages. G.S. 1-567.2(a), however, provides that parties "may include in a written contract a provision for the settlement by arbitration of *any* controversy thereafter arising between them relating to such contract or the failure or refusal to perform the whole or any part thereof." (Emphasis supplied.) Thus, there is no legislative bar to arbitration of these claims as long as they arise out of or relate to the contract or its breach.

[4] Because the duty to arbitrate is contractual, only those disputes which the parties agreed to submit to arbitration may be so resolved. *See Coach Lines v. Brotherhood,* 254 N.C. 60, 67-68, 118 S.E. 2d 37, 43 (1961). To determine whether the parties

agreed to submit a particular dispute or claim to arbitration, we must look at the language in the agreement, *viz.*, the arbitration clause, and ascertain whether the claims fall within its scope. In so doing, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Cyclone Roofing Co. v. LaFave Co.*, 312 N.C. 224, 229, 321 S.E. 2d 872, 876 (1984), *quoting Moses H. Cone Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 74 L.Ed. 765, 785, 103 S.Ct. 927, 941 (1983). This is so because public policy in this State, like federal policy, favors arbitration. *See Cyclone Roofing*, 312 N.C. at 229, 321 S.E. 2d at 876; and *Moses H. Cone Hospital*, 460 U.S. at 24, 74 L.Ed. 2d at 785, 103 S.Ct. at 941; *see also Thomas v. Howard*, 51 N.C. App. 350, 355-56, 276 S.E. 2d 743, 747 (1981). Because federal policy and the policy of this State are the same in this regard, it is appropriate to look to federal cases for guidance in determining whether plaintiff's claims fall within the scope of the arbitration clause.

Other courts have generally agreed that whether a claim falls within the scope of an arbitration clause and is thus subject to arbitration depends not on the characterization of the claim as tort or contract, but on the relationship of the claim to the subject matter of the arbitration clause. *See, e.g., McBro Planning & Develop. v. Triangle Elec. Const.*, 741 F. 2d 342, 344 (11th Cir. 1984); *Morgan v. Smith Barney, Harris Upham & Co.*, 729 F. 2d 1163, 1167 (8th Cir. 1984); *In re Oil Spill by Amoco Cadiz, etc.*, 659 F. 2d 789, 794 (7th Cir. 1981); *see also Altshul Stern v. Mitsui Bussan Kaisha, Ltd.*, 385 F. 2d 158, 159 (2d Cir. 1967) ("Plaintiff cannot avoid the broad language of the arbitration clause by casting its complaint in tort."). Arbitration clauses worded similarly to the one here have been found sufficiently broad to include tort claims which arise out of or are related to the contract between the parties or their contractual relationship. *See Pierson v. Dean, Witter, Reynolds, Inc.*, 742 F. 2d 334, 338 (7th Cir. 1984); *Acevedo Maldonado v. PPG Industries, Inc.*, 514 F. 2d 614, 616 (1st Cir. 1975); *Bos Material Handling v. Crown Controls Corp.*, 137 Cal. App. 3d 99, 105-06, 186 Cal. Rptr. 740, 742-43 (1982).

In *Pierson*, 742 F. 2d at 338, the Seventh Circuit held that where the contract between the parties provided for the arbitration of any controversy "arising out of or relating to this contract or breach thereof," the plaintiffs' claims for fraud under the con-

tract, breach of fiduciary duty, negligence, and gross negligence were included within the scope of the arbitration provision. In *Acevedo*, 514 F. 2d at 616, the First Circuit held that contract provisions for the arbitration of "any controversy or claim arising out of or relating to this Agreement or the breach thereof" were sufficiently broad to cover contract-generated or contract-related disputes between the parties regardless of whether the claims are in contract or in tort. Similarly, in *Bos*, 137 Cal. App. 3d at 105-06, 186 Cal. Rptr. at 742-43, the court interpreted a clause in a dealer agreement which provided that "[a]ny controversy or claim arising out of or relating to this agreement, or the breach thereof, shall be settled by arbitration . . ." as sufficiently broad to include tort as well as contract claims which " 'have their roots in the relationship between the parties which was created by the contract,' " including the plaintiff's claims for wrongful termination of the dealership, fraud, unfair competition, restraint of trade, and wrongful misrepresentation.

[5, 6] In light of this State's policy favoring arbitration, we conclude that the language of the arbitration clause here is sufficiently broad to include *any* claims which arise out of or are related to the contract or its breach, regardless of the characterization of the claims as tort or contract. The claims asserted here all concern alleged tortious conduct on the part of defendants which occurred in connection with, or as a part of, the formation of, performance under, or breach of the contract between plaintiff and McQueen Properties. The actions which form the basis for the claims allegedly were taken for the purpose of defeating plaintiff's claim for damages arising under the contract. The damages plaintiff seeks to recover, with the exception of the punitive damages, resulted either from defendants' alleged failure to pay money due under the contract or from James McQueen's alleged interference with plaintiff's performance under the contract. Plaintiff's claim for punitive damages is based on defendants' negligent or fraudulent misrepresentation as to the owner of the property to which the contract related; thus, it also has a strong relationship to the contract and its breach. We conclude that there is a sufficiently strong relationship between plaintiff's claims and the subject matter of the arbitration clause, *viz.*, the contract or its breach, that they should be considered as arising out of or relating to the contract or its breach. They thus fall

within the scope of the arbitration clause and are included within the category of claims which the parties agreed to arbitrate.

[7] Plaintiff contends, however, that its unfair and deceptive practices claim pursuant to G.S. 75-1.1 is not proper for arbitration, citing *Wineland v. Marketex Intern., Inc.*, 627 P. 2d 967 (Wash. App. 1981). In *Wineland*, the Washington Court of Appeals held that an unfair and deceptive practices claim brought pursuant to that state's consumer protection act, RCW 19.86.010 *et seq.*, was not referable to arbitration. *Id.* at 970. That court found that the Washington Consumer Protection Act was a state antitrust law and that claims under it, like those under federal antitrust laws, affect the public interest and thus must be judicially enforced. *Wineland*, 627 P. 2d at 969. In so holding the court relied on cases holding that federal antitrust claims are not arbitrable, particularly *American Safety Equipment Corp. v. J.P. Maguire & Co.*, 391 F. 2d 821, 828 (2d Cir. 1968). *Wineland* was subsequently overruled by the Washington Supreme Court in *Garmo v. Dean, Witter, Reynolds, Inc.*, 681 P. 2d 253, 255 (Wash. 1984).

Other courts have declined to exclude similar claims from arbitration. *See, e.g., J & K Cement Const. v. Montalbano Builders*, 456 N.E. 2d 889, 896 (Ill. App. 1983); *Greenleaf Engineering & Const. v. Teradyne*, 447 N.E. 2d 9, 12-13 (Mass. App. 1983); *Flower World of America, Inc. v. Wenzel*, 594 P. 2d 1015, 1019-20 (Ariz. App. 1978).

In *J & K Cement Const.* and *Greenleaf Engineering Const.*, a party set forth allegations in support of breach of contract and fraud claims, followed by a conclusory allegation that the acts complained of also constituted unfair and deceptive acts in violation of the state consumer protection act. In both cases the appellate court found that the allegations of unfair and deceptive acts were not asserted to vindicate any aspect of strong public policy, but were merely an attempt to bolster and supplement clearly private claims. *J & K Cement Const.*, 456 N.E. 2d at 896; *Greenleaf Engineering*, 447 N.E. 2d at 13. For that reason the unfair and deceptive acts claims were held to be arbitrable.

In *Flower World* the court found that the plaintiff's claim that the defendant violated the state's consumer fraud act was "essentially a private dispute arising out of a commercial transac-

tion," that there was "no strong public policy favoring litigation rather than arbitration of the claim," and that therefore the claim was arbitrable under a broad arbitration clause. *Flower World*, 594 P. 2d at 1019-20. In so finding the court convincingly distinguished *American Safety Equipment Corp. v. J.P. Maguire & Co.*, 391 F. 2d 821 (2d Cir. 1968), on which the court in *Wineland* had relied.

We find the latter line of cases persuasive with respect to plaintiff's unfair and deceptive practices claim. The claim concerns essentially a private dispute and does not appear asserted to vindicate any strong public policy which requires that it be litigated rather than arbitrated. It appears asserted merely to bolster and supplement the remainder of plaintiff's claims and to increase the amount of damages recoverable. Accordingly, we find no reason to exclude this claim from arbitration.

[8] Plaintiff also contends that its claims are not arbitrable because it sought to recover punitive damages. Citing *Garrity v. Lyle Stuart, Inc.*, 353 N.E. 2d 793 (N.Y. 1976), plaintiff argues that punitive damages claims are not properly subject to arbitration. *Garrity* was an action to confirm an arbitration award granting a party compensatory and punitive damages. The New York Court of Appeals, in a four to three decision, vacated the award of punitive damages, reasoning as follows:

> An arbitrator has no power to award punitive damages, even if agreed upon by the parties. . . . Punitive damages is a sanction reserved to the State, a public policy of such magnitude as to call for judicial intrusion to prevent its contravention. Since enforcement of an award of punitive damages as a purely private remedy would violate strong public policy, an arbitrator's award which imposes punitive damages should be vacated.

*Garrity*, 353 N.E. 2d at 794. The court stated that "[t]he evil of permitting an arbitrator . . . to award punitive damages is that it displaces the court and the jury, and therefore the State, as the engine for imposing a social sanction." *Garrity*, 353 N.E. 2d at 796. The court further expressed concern that if arbitrators were permitted to award punitive damages, there would be no effective judicial supervision over such awards and the arbitrator's power would be uncontrollable. *Id.*

While one state court has agreed with *Garrity, see School City of East Chicago v. East Chicago Federation of Teachers,* 422 N.E. 2d 656, 662-63 (Ind. App. 1981), its rule has otherwise been criticized and rejected. *See, e.g., Willoughby Roofing & Supply v. Kajima Intern.,* 598 F. Supp. 353, 359-65 (N.D. Ala. 1984); *Willis v. Shearson/American Express, Inc.,* 569 F. Supp. 821, 823-24 (M.D.N.C. 1983); *Baker v. Sadick,* 162 Cal. App. 3d 618, 629-30, 208 Cal. Rptr. 676, 683-84 (1984). *See also* Note, *Punitive Damages In Arbitration: The Search for A Workable Rule,* 63 Cornell L. Rev. 272 (1978). Of these cases, *Willoughby,* 598 F. Supp. at 359-65, presents the most thorough analysis of both sides of the issue. The court there found unpersuasive the reasons stated by the *Garrity* court in support of its holding. It concluded that no public policy prohibits parties to a contract from vesting arbitrators with authority to consider claims for punitive damages and that to hold that such claims could not be arbitrated would be inconsistent with the strong federal policies favoring the arbitrability of issues and the remedial flexibility of arbitrators. *Id.* at 361-65; *see also Willis,* 569 F. Supp. at 824. The court noted that when both tort and contract claims arising from the same dispute are asserted, and punitive damages are sought, as here, application of the *Garrity* rule

> would require two trials—one before the arbitrator and then 'a separate judicial trial on essentially the same facts—obviously a wasteful exercise.' . . . This would undermine the chief advantages and purposes of arbitration—to relieve congestion in the courts and to achieve a quick, inexpensive and binding resolution of all disputes that arise between the parties to an agreement. [Citations omitted.]

*Willoughby,* 598 F. Supp. at 364. It stated that if parties wish to exclude the issue of punitive damages from arbitration, they are free to so specify in their agreement. *Id.* at 365; *see also Baker,* 162 Cal. App. 3d at 630, 208 Cal. Rptr. at 684. The court further concluded that the arbitration clause there—which was essentially the same as that here—was broad enough to empower the arbitrators to award punitive damages. *Willoughby,* 598 F. Supp. at 357-59.

We believe the *Willoughby* position the better reasoned one. We detect no public policy in this State prohibiting the arbitra-

tion of claims for punitive damages which fall within the scope of an arbitration agreement. Our legislature has not indicated that the arbitration of claims for punitive damages is against public policy as it has not exempted such claims from the Uniform Arbitration Act, G.S. 1-567.1 *et seq.* In light of the strong policy in this State favoring arbitration, *see Thomas*, 51 N.C. App. at 355-56, 276 S.E. 2d at 747, we conclude that such claims are arbitrable and that the agreement here is sufficiently broad to empower the arbitrators to award punitive damages.

**[9, 10]**   Since we have determined that plaintiff's claims are arbitrable and within the scope of the arbitration agreement, we reach the question of whether the claims are barred under the doctrine of res judicata. For a judgment to constitute res judicata in a subsequent action, there must be identity of parties, subject matter, and issues. *See Kleibor v. Rogers*, 265 N.C. 304, 307, 144 S.E. 2d 27, 30 (1965); *Shaw v. Eaves*, 262 N.C. 656, 661, 138 S.E. 2d 520, 525 (1964). The present action concerns essentially the same subject matter (claims arising under the contract executed by plaintiff and McQueen Properties), the same issues (defendants' liability and the damages to which plaintiff is entitled with respect to such claims), and the same parties as the prior arbitration proceeding. Thus, res judicata is applicable. *Id.* Although James McQueen was not named as a party to the arbitration, it is clear that he had a strong financial interest in the determination of the issues there because of his ownership interests in McQueen Properties and Parkhill Associates, and that he was an active and controlling participant in the arbitration. He thus is bound by the judgment entered on the arbitration award just as if he were a named party to the proceeding. *See King v. Grindstaff*, 284 N.C. at 357, 200 S.E. 2d at 806; *Enterprises v. Rose*, 283 N.C. 373, 377-78, 196 S.E. 2d 189, 192 (1973); *Light Co. v. Insurance Co.*, 238 N.C. 679, 692, 79 S.E. 2d 167, 176 (1953), *reh. denied*, 240 N.C. 196, 81 S.E. 2d 404 (1954).

The materials submitted in support of defendants' motion for summary judgment clearly show that the claims asserted here arose out of the dispute submitted to arbitration and that they were relevant and material matters within the scope of the arbitration proceeding. Indeed, plaintiff does not argue to the contrary. These materials further show that at least some of the claims comprising the present action—those for damages based

on James McQueen's interference with work on the housing project and for additional interest plaintiff incurred on loans because of the delay in arbitration — were in fact arbitrated.

The defense of res judicata may not be avoided by shifting legal theories or asserting a new or different ground for relief, as attempted by plaintiff here. *Goldstein v. Doft*, 236 F. Supp. 730, 734 (S.D.N.Y. 1964), *aff'd*, 353 F. 2d 484 (2d Cir. 1965), *cert. denied*, 383 U.S. 960, 16 L.Ed. 2d 302, 86 S.Ct. 1226 (1966). *See also Schattner v. Girard, Inc.*, 668 F. 2d 1366, 1368 (D.C. Cir. 1981). We conclude that the materials submitted in support of the motion for summary judgment conclusively show that the claims asserted here were, or could and should have been, brought forward and determined in the prior arbitration proceeding. Thus, defendants have shown that the claims are barred by the res judicata effect of the judgment entered on the arbitration award and that they are entitled to summary judgment.

Affirmed.

Chief Judge HEDRICK and Judge WEBB concur.