An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1420
NORTH CAROLINA COURT OF APPEALS

Filed: 1 July 2014

ELJ, INC.,
        Plaintiff,

v.                                      Onslow County
                                        No.  13-CVS-2383
WILLIAM J. JEFFERYS AND A.C.
SCHULTES OF CAROLINA, INC.,
        Defendants.


        Appeal by defendants from Order entered 10 September 2013 by Judge Gary E. Trawick in Superior Court, Onlsow County. Heard in the Court of Appeals 24 April 2014.


        *Harris, Creech, Ward & Blackerby, P.A., by Luke A. Dalton and Jay C. Salsman, for plaintiff-appellee.*

        *Bugg & Wolf, P.A., by William R. Sparrow, for defendants-appellants.*

        STROUD, Judge.

        William Jefferys and A.C. Schultes of Carolina, Inc. ("defendants") appeal from an order entered 10 September 2013 denying their motion to compel arbitration. We affirm.

                        I.    Background

        On 24 June 2013, ELJ, Inc. ("plaintiff") filed a complaint in superior court, Craven County, against defendants. It alleged

that defendant Jefferys, president of A.C. Schultes, made a number of derogatory statements about ELJ while the parties were competing for construction bids in Pamlico County and Lenoir County. It alleged that these statements were defamatory *per se* and that they constituted unfair and deceptive trade practices. With consent of both parties, venue was moved to Onslow County.

The parties had previously worked together on a construction project in Farmville, North Carolina. A.C. Schultes was the prime contractor on the project and ELJ was a subcontractor. The subcontract they signed for that project included an arbitration provision that required arbitration of "[a]ny claim arising out of or related to this Subcontract . . . ." Defendants filed a motion to compel mediation and arbitration on the basis of this provision.

The superior court heard defendants' motion on 3 September 2013. By order entered 10 September 2013, the superior court denied defendants' motion to compel mediation and arbitration. Defendants timely filed written notice of appeal to this Court.

## II. Appellate Jurisdiction

Defendants appeal from an interlocutory order denying their motion to compel arbitration. An order denying a motion to compel arbitration affects a substantial right. *Sillins v. Ness*,

164 N.C. App. 755, 756, 596 S.E.2d 874, 875 (2004). Therefore, it is immediately appealable and this Court has jurisdiction to consider the appeal. *Id.*

### III. Motion to Compel Arbitration

Defendants argue that the trial court erred in denying their motion to compel arbitration because the parties had entered into a contract with an arbitration provision that covers plaintiff's defamation claim. We disagree.

> As a general matter, public policy favors arbitration. However, before a dispute can be ordered resolved through arbitration, there must be a valid agreement to arbitrate. Thus, whether a dispute is subject to arbitration is a matter of contract law. Parties to an arbitration must specify clearly the scope and terms of their agreement to arbitrate. Moreover, a party cannot be forced to submit to arbitration of any dispute unless he has agreed to do so.
>
> The question of whether a dispute is subject to arbitration is an issue for judicial determination. . . . [T]he trial court's conclusion as to whether a particular dispute is subject to arbitration is a conclusion of law, reviewable *de novo* by the appellate court. [The determination of] [w]hether a dispute is subject to arbitration involves a two pronged analysis; the court must ascertain both (1) whether the parties had a valid agreement to arbitrate, and also (2) whether the specific dispute falls within the substantive scope of that agreement.

*Raspet v. Buck*, 147 N.C. App. 133, 135-36, 554 S.E.2d 676, 678 (2001) (citations and quotation marks omitted).

"The determination of whether a particular claim is arbitrable is controlled by the language of the parties' agreement." *Ruffin Woody And Associates, Inc. v. Person County*, 92 N.C. App. 129, 133, 374 S.E.2d 165, 168 (1988), *disc. rev. denied*, 324 N.C. 337, 378 S.E.2d 799 (1989).

> Other courts have generally agreed that whether a claim falls within the scope of an arbitration clause and is thus subject to arbitration depends not on the characterization of the claim as tort or contract, but on the relationship of the claim to the subject matter of the arbitration clause.

*Rodgers Builders, Inc. v. McQueen*, 76 N.C. App. 16, 24, 331 S.E.2d 726, 731 (1985), *disc. rev. denied*, 315 N.C. 590, 341 S.E.2d 29 (1986).

Here, it is undisputed that the parties signed a contract with an arbitration clause. The only dispute concerns whether the tort claims fall within its scope. The primary contract between the Town of Farmville and A.C. Schultes concerned the construction of water transmission lines for Farmville. A.C. Schultes and ELJ signed a subcontract that required ELJ to provide certain labor and material in connection to the project. The subcontract contained the following arbitration provision:

**6.2 ARBITRATION**
**6.2.1** Any claim arising out of or related to this Subcontract, except claims as otherwise provided in Subparagraph 4.1.5[1] and except those waived in the Subcontract, shall be subject to arbitration. Prior to arbitration, the parties shall endeavor to resolve disputes by mediation in accordance with the provision of Paragraph 6.1.

In *Rodgers Builders, Inc.* we considered an arbitration clause similar to the one here. In that case, the arbitration clause provided: "'All claims, disputes and other matters in question between the Contractor [plaintiff] and the Owner [McQueen Properties] arising out of, or relating to, the Contract Documents or the breach thereof, . . . shall be decided by arbitration . . . .'" *Id.* at 18, 331 S.E.2d at 728. The subsequent claims in that case were tort claims related to "a dispute . . . concerning plaintiff's alleged failure to complete the project within the time specified in the contract and McQueen Properties' subsequent refusal to pay a draw request in the amount of $177,000 submitted by plaintiff." *Id.* We observed that the tort claims were subject to arbitration because "[t]he actions which form the basis for the claims allegedly were taken for the purpose of defeating plaintiff's claim for damages

---

[1] This subparagraph concerned the authority of the prime contractor and architect to reject any work performed by ELJ that does not conform to the prime contract.

arising under the contract." *Id.* at 25, 331 S.E.2d at 732. Therefore, we concluded that the "alleged tortious conduct on the part of defendants . . . occurred in connection with, or as a part of, the formation of, performance under, or breach of the contract between plaintiff and McQueen Properties" and held that the claims were subject to arbitration. *Id.*

ELJ's complaint alleged that the parties worked together on a project for the Town of Farmville in 2009 and 2010, the project covered by the subcontract discussed above. That project "ended up in litigation, with [A.C. Schultes] filing suit against ELJ." In 2012, a project in Grantsboro, Pamlico County, was posted for bid. ELJ alleged that defendant Jefferys made a number of defamatory statements to engineers for the Pamlico County project in order to convince the County to award the contract to A.C. Schultes instead of ELJ. There is no indication on the face of the complaint that the project in Pamlico County had anything to do with the Farmville project.

Both parties also bid on a project in the Town of LaGrange, Lenoir County. ELJ alleged that defendant Jefferys also called an influential supplier on that project, the LaGrange mayor, and the LaGrange public works director to make several derogatory statements regarding ELJ's past work. ELJ alleged that these

statements were made in an attempt to dissuade LaGrange from hiring ELJ to work on the project. There is no indication that this project had anything to do with the Farmville project either.

The only evident relevance of the Farmville project to the present claims is to explain how the parties knew each other prior to the later bids.  It is the conduct surrounding these later bid contests that gave rise to plaintiff's claims here, not the performance or breach of the contract. Even assuming that Jeffreys' allegedly derogatory statements were *about* ELJ's performance of the Farmville project, we cannot say that these claims are "arising out of or related to [the Farmville] Subcontract." *See Fontana v. Southeast Anesthesiology Consultants, P.A.*, ___ N.C. App. ___, ___, 729 S.E.2d 80, 87 (holding that a plaintiff's tort claims were not covered by an arbitration agreement where "the facts underlying plaintiff's allegations relating to the tort claims may have contributed to creating the environment which led to plaintiff's termination, but they do not specifically pertain to a dispute concerning plaintiff's termination."), *disc. rev. denied*, 366 N.C. 394, 732 S.E.2d 478 (2012).

The alleged defamatory statements were made after the project, as well as the related litigation, was complete. They were not substantially related to the subcontract. Unlike in *Rodgers Builders, Inc.*, the conduct giving rise to plaintiff's tort claims did not occur "in connection with, or as a part of, the formation of, performance under, or breach of the contract between" the parties. 76 N.C. App. at 25, 331 S.E.2d at 732.

Although defendants correctly observe that this arbitration provision is broad, it is not quite so broad as to reach all conduct between the parties. Given the lack of connection between the claims under consideration here and the contract containing the agreement to arbitrate, we conclude that plaintiff is not required to arbitrate these claims. Therefore, we affirm the trial court's denial of defendants' motion to compel arbitration.

## IV. Conclusion

We conclude that the arbitration provision in the contract between the parties does not cover the unrelated tort claims later brought by plaintiff. Therefore, we affirm the trial court's order denying defendants' motion to compel arbitration.

AFFIRMED.

Judges HUNTER, JR., Robert N. and DILLON concur.

Report per Rule 30(e).