STEPHENS, Judge.
Plaintiff Harvey D. Kohn, M.D., ("Dr.Kohn") appeals from the trial court's order granting summary judgment to Defendant FirstHealth of the Carolinas, Inc., ("FirstHealth") on Dr. Kohn's claim that FirstHealth acted arbitrarily and capriciously in denying his application for staff privileges at Moore Regional Hospital. Dr. Kohn also argues that the trial court erred in granting FirstHealth's motion to dismiss his claims for monopolization, attempted monopolization, and discrimination on the basis of national origin and ethnicity. After thorough review, we hold that the trial court did not err and we consequently affirm its orders.
I. Facts and Procedural History
Dr. Kohn is a medical doctor specializing in obstetrics and gynecology ("OB/GYN"). He is a native of Canada, and he earned his medical degree from the University of Toronto Faculty of Medicine in 1972 before completing his internship and residency in OB/GYN at McMaster University in Hamilton, Ontario in 1977 and becoming a Fellow of the Royal College of Surgeons of Canada in 1978. Dr. Kohn has been continually licensed by the North Carolina State Medical Board since 31 July 1993, and he obtained his board certification from the American Board of Obstetrics and Gynecology in 2006. Dr. Kohn is an official visiting clinician at the University of North Carolina Memorial Hospital and currently holds staff privileges at Scotland Memorial Hospital in Laurinburg. Many of Dr. Kohn's patients reside in Moore County and other nearby communities, and Defendant FirstHealth's Moore Regional Hospital, which is the only secondary care hospital with full surgical specialty facilities in Moore County, is their hospital of choice.
In 1999, Dr. Kohn applied for staff privileges at Moore Regional Hospital. However, in a letter dated 3 November 1999, FirstHealth notified Dr. Kohn that it could not accept his application because the pre-application screening it conducted revealed that Dr. Kohn did not satisfy the provision in FirstHealth's Medical Staff Bylaws that requires all members of its medical staff to have successfully completed "a residency program in the planned practice specialty, approved by the Accreditation Council for Graduate Medical Education (ACGME)."[1] The ACGME was established in 1981 and is a "private professional organization with the responsibility for ensuring the quality of approximately 8,400 accredited residency and fellowship programs in 121 specialty and subspecialty areas of medicine" in the United States and Puerto Rico. Prior to 1981, the ACGME performed essentially the same function but was known as the Liaison Committee for Graduate Medical Education ("LCGME").[2] The Joint Commission for Accreditation of Hospitals requires that each hospital's bylaws include qualifications for appointment to its medical staff, and for approximately 20 years, FirstHealth has relied on its ACGME requirement for granting staff privileges because, according to Moore Regional Hospital's Chief Medical Officer John F. Krahnert, Jr., it provides "an objective, neutral, and uniform measure of a physician's education and training and serves an important quality-assurance process by helping to ensure safe and effective patient care."
On 16 November 2010, Dr. Kohn resubmitted his hospital staff privileges application to FirstHealth. Upon receiving it, FirstHealth's Medical Staff Coordinator Fay C. Meginnis contacted McMaster University and confirmed that its OB/GYN residency program is not accredited by the ACGME but is instead certified by the Royal College of Canada. On 9 December 2010, Meginnis sent Dr. Kohn a letter stating that his staff privileges application had been denied because he did not "meet the minimum qualifications as stipulated in the Medical Staff Bylaws of having completed a residency program in the planned practice specialty, approved by the [ACGME]." On 11 January 2011, Dr. Kohn sent a letter protesting the denial of his application, arguing that his McMaster University residency program was equivalent to a residency approved by the ACGME, and that his residency program had been "recognized" by the ACGME so FirstHealth should consider it sufficient to satisfy its bylaws. In a letter dated 25 January 2011, Watters informed Dr. Kohn that FirstHealth interpreted the word "approved" in its bylaws to mean "accredited," rather than merely "recognized." Watters subsequently confirmed with the ACGME that it "does not accredit[,] nor has it ever accredited" McMaster University's OB/GYN residency program because "[t]he ACGME solely accredits residency programs within the United States and Puerto Rico." Additional complaints Dr. Kohn filed with FirstHealth led to a review of the decision to deny his application by the hospital's Credentials Committee and its Medical Executive Committee, which both agreed that Dr. Kohn did not meet the minimum standards set forth in the Medical Staff Bylaws. Moreover, the hospital's Medical Staff Bylaws Committee, Medical Executive Committee, and Board of Trustees each considered whether to amend the Medical Staff Bylaws but ultimately declined to do so.
On 19 January 2012, Dr. Kohn and two of his patients filed a complaint against FirstHealth in Moore County Superior Court asserting six causes of action, including monopolization, attempted monopolization, violation of North Carolina's public utility doctrine, combination in restraint of trade, violation of NAFTA, and arbitrary and capricious conduct. When the trial court granted FirstHealth's motion to dismiss Dr. Kohn's claims under NAFTA and North Carolina's public utility doctrine by written order entered 27 July 2012, Dr. Kohn voluntarily dismissed all remaining claims and appealed the dismissal of his public utility claim to this Court. In Kohn I,we affirmed the trial court's decision, reasoning that even taking Dr. Kohn's allegations as true, "nothing in either our General Statutes or the decisions of our Courts support[s] classifying [FirstHealth] as a public utility." --- N.C.App. at ----, 747 S.E.2d at 397.
On 27 September 2013, Dr. Kohn filed a second complaint in Moore County Superior Court in which he reasserted his claims against FirstHealth for monopolization, attempted monopolization, and arbitrary and capricious conduct, and also added a new claim for discrimination based on national origin and ethnicity. On 18 November 2013, FirstHealth answered and moved to dismiss Dr. Kohn's second complaint. By order entered 11 February 2014, the trial court granted this motion as to the claims for monopolization, attempted monopolization, and discrimination, but denied FirstHealth's motion to dismiss Dr. Kohn's claim for arbitrary and capricious conduct. The parties filed cross-motions for summary judgment on the arbitrary and capricious conduct claim and, after a hearing held on 23 June 2014, the trial court entered an order on 30 June 2014 granting FirstHealth's motion for summary judgment and denying Dr. Kohn's motion. On 14 July 2014, Dr. Kohn gave notice of appeal to this Court. On 12 February 2015, FirstHealth filed a motion to dismiss Dr. Kohn's appeal as moot, which we address infra.
II. Analysis
A. Arbitrary and capricious conduct
(1) FirstHealth's motion to dismiss
Before reaching the substance of Dr. Kohn's claims, we must first address FirstHealth's motion to dismiss this appeal as moot. Specifically, FirstHealth contends that Dr. Kohn has already received the only relief he is entitled to under North Carolina law. We disagree.
Section 131E-85 of our General Statues provides that
[t]he granting or denial of privileges to practice in hospitals to physicians ... and the scope and delineation of such privileges shall be determined by the governing body of the hospital on a non-discriminatory basis. Such determinations shall be based upon the applicant's education, training, experience, demonstrated competence and ability, and judgment and character of the applicant, and the reasonable objectives and regulations of the hospital, including, but not limited to appropriate utilization of hospital facilities, in which privileges are sought. Nothing in this Part shall be deemed to mandate hospitals to grant or deny to any such individuals or others privileges to practice in hospitals, or to offer or provide any type of care.
N.C. Gen.Stat. § 131E-85(a) (2013).
This Court has recognized that "the operation of a hospital, whether publicly or privately owned, is subject to State regulation." Claycomb v. HCA-Raleigh Cmty. Hosp.,76 N.C.App. 382, 385, 333 S.E.2d 333, 335 (1985), disc. review denied,315 N .C. 586, 341 S.E.2d 23 (1986). However, "the State's involvement in the operation of a hospital should extend only to the point of insuring that the community's medical needs are met." Id.at 385, 333 S.E.2d at 335-36. Thus, we held in Claycombthat because "the right to enjoy staff privileges is not absolute, but is subject to the standards and objectives set by the hospital's governing body," section 131E-85 allows for judicial review on the narrow question of whether the hospital's decision to deny staff privileges was reasonable. Id.at 385, 333 S.E.2d at 336 ; see also Cameron v. New Hanover Memorial Hosp., Inc.,58 N.C.App. 414, 449, 293 S.E.2d 901, 922 (recognizing that "[n]o court should substitute its [judgment] for that of the [h]ospital [b]oard ... which is charged with the responsibility of providing a competent staff of doctors ... so long as staff selections are administered with fairness, geared by a rationale compatible with hospital responsibility, and unencumbered with irrelevant considerations") (citation omitted), appeal dismissed and disc. review denied,307 N.C. 127, 297 S.E.2d 399 (1982). Accordingly, this Court's review of whether a denial of staff privileges was arbitrary, capricious or discriminatory is based on our determination of whether the hospital's decision "was: (1) not reasonably related to the operation of the hospital; (2) not rationally compatible with the hospital's responsibility; or (3) based on irrelevant considerations." Claycomb,76 N.C.App. at 386, 333 S.E.2d at 336. If a reviewing court determines that a hospital's decision to deny an application for staff privileges was unreasonable, section 131E-85 entitles the applicant "to have his application for staff privileges reviewed and a decision, granting or denying him staff privileges, based on the other criteria provided in the statute such as his education, training, experience, demonstrated competence and ... character." Id.(citation and internal quotation marks omitted).
In support of its motion to dismiss Dr. Kohn's appeal as moot, FirstHealth argues that it has already reviewed Dr. Kohn's application and rejected it twice due to his not having completed a residency accredited by the ACGME-which, as the statute requires, relates to his "education, training, [and] experience." Thus, FirstHealth contends that even if this Court were to determine that the denial of Dr. Kohn's staff privileges application was arbitrary and capricious, the terms of section 131E-85 make clear that the appropriate remedy would be for FirstHealth to review Dr. Kohn's application again, which FirstHealth implies would not impact the ultimate result here because FirstHealth has no intention of amending its bylaws or making an exception to them for Dr. Kohn's benefit. In short, FirstHealth argues that there is simply nothing this Court could order that would have any practical effect on Dr. Kohn's application for staff privileges, therefore rendering this appeal moot. This argument fundamentally misapprehends the function of judicial review under section 131E-85 and is wholly devoid of merit. Put simply, if this Court were to determine that FirstHealth used its ACGME-accredited residency requirement to arbitrarily and capriciously deny staff privileges to Dr. Kohn, then Dr. Kohn would be entitled to have FirstHealth reassess his application based on the terms of the statute, rather than on the basis of a requirement that this Court would have already declared unreasonable. Consequently, FirstHealth's motion to dismiss is denied.
(2) Dr. Kohn's appeal
Dr. Kohn argues first that the trial court erred in granting FirstHealth's motion for summary judgment because the denial of his application for staff privileges based on his lack of a residency accredited by the ACGME constituted arbitrary and capricious conduct in violation of section 131E-85. We disagree.
We review de novoa trial court's decision to grant or deny a motion for summary judgment, focusing on
whether there is any genuine issue of material fact and whether the moving party is entitled to a judgment as a matter of law. Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.
Hyatt v. Mini Storage on Green,--- N.C.App. ----, ----, 763 S.E.2d 166, 169 (2014) (citations and internal quotation marks omitted).
Dr. Kohn offers several related arguments in support of his position and their primary thrust is that FirstHealth's requirement that applicants complete a residency accredited by the ACGME is not reasonably related to the operation of the hospital and is instead based on irrelevant considerations. However, many of Dr. Kohn's arguments revolve around misstatements of fact, or law, or both, and we do not find any of them persuasive.
On the one hand, Dr. Kohn relies heavily on this Court's prior decision in Cameron.There, we reviewed claims by two podiatrists that the defendant hospital's decision to deny their applications for full staff privileges based on their inability to satisfy the requirements in the hospital's bylaws that applicants complete a one-year residency and be Fellows in the American College of Foot Surgeons, as well as board-eligible pursuant to certification from the American Board of Podiatric Surgery, was arbitrary and capricious. 58 N.C.App. at 448, 293 S.E.2d at 921. Dr. Kohn contends that Cameronestablished that "a requirement of certification by any particular society as a mandatory prerequisite for the right of a duly licensed physician to practice his profession in a public hospital is illegal, arbitrary, capricious and beyond the jurisdiction of the governing body of the hospital." Id.at 450, 293 S.E.2d at 922 (citation omitted). Thus, Dr. Kohn argues that FirstHealth's use of the ACGME as the basis for granting or denying staff privileges flatly violates our existing case law and ignores the CameronCourt's recognition that "specialty board certification or eligibility is an excellent benchmark to serve as the basis for [staff] privilege delineation." Id.at 449-50, 293 S.E.2d at 922 (citation, internal quotation marks, and ellipsis omitted). However, Dr. Kohn's argument is fatally undermined by the fact that it utilizes selective quotations out of context in order to wholly mischaracterize Cameron's reasoning and result. Indeed, while the quoted language Dr. Kohn emphasizes comes from a portion of the opinion that surveyed approaches adopted by other courts in different states, his argument ignores the fact that we ultimately ruled in favor of the defendant hospital based on our holding that "[i]t is not arbitrary, capricious, and discriminatory to [deny staff privileges to physicians who] have been unable to comply with the standards properly established by the [hospital]." Id.at 452, 293 S.E.2d at 923. This argument is without merit.
Dr. Kohn also argues that FirstHealth's ACGME-based standard is being unfairly applied to him. Specifically, Dr. Kohn complains that FirstHealth has previously made exceptions to its residency requirement but has refused to do so in his case because its accreditation committee is chaired by the head of an OB/GYN practice that competes against Dr. Kohn for patients in Moore County. In support of this argument, Dr. Kohn cites Cowan v. Gibson,392 S.W.2d 307 (Mo.1965), receded from by Egan v. St. Anthony's Med. Ctr.,244 S.W.3d 169 (Mo.2008), which he contends establishes that a physician's rights are violated when he is denied staff privileges by a committee dominated by a competitor. Here again, Dr. Kohn's argument relies on distortions of the legal authority he cites. First, Dr. Kohn makes no mention of the fact that, until recently, Cowan's holding was widely construed to stand for the proposition that, under Missouri law, "there may be no judicial review of the staffing decisions of private hospitals," see Egan,244 S.W.3d at 169. Moreover, although Missouri's Supreme Court did hold that the plaintiff doctor in Cowanwhose staff privileges were revoked due to what he alleged was a conspiracy could state a cause of action for relief, the Court made clear that the action would not be against the hospital itself but instead against individual physicians on its medical staff who, acting in their own personal professional capacities and "outside the operation and government of the hospital," undertook deliberate acts to interfere with the plaintiff's business and livelihood for their own financial gain. 392 S.W.2d at 309. Dr. Kohn makes no similar allegations, and our review of the record compels our conclusion that Cowanis inapposite to the present facts.
While Dr. Kohn complains that FirstHealth has previously made exceptions and granted staff privileges to several other physicians who completed their residencies prior to 1981 when the ACGME was formally established, his argument overlooks the fact that in all but two of those cases, the applicant had completed a residency accredited by the ACGME's predecessor organization, the LCGME. Further, while Dr. Kohn appears to be correct in claiming that FirstHealth granted staff privileges on two occasions to physicians whose residencies were neither ACGMEnor LCGME-accredited, the record indicates that these actions resulted from inadvertent oversights that occurred in the mid-1990s and that since then, FirstHealth has consistently applied its ACGME-based requirement to all applicants for staff privileges. Finally, despite his protests that his application was rejected due to a conflict of interest with the chair of FirstHealth's accreditation committee, Dr. Kohn cites no evidence or authority to support the notion that FirstHealth's bylaws provide any degree of discretion in applying the ACGME requirement. Indeed, as already noted, the record indicates the ACGME requirement has been consistently applied to every applicant for staff privileges since before Dr. Kohn first applied for privileges in 1999.
Dr. Kohn argues further that FirstHealth's decision to deny him staff privileges was arbitrary and capricious because his Canadian residency is functionally equivalent to a residency accredited by the ACGME, and because many prominent American hospitals regularly grant staff privileges to Canadian-trained physicians. This argument fails because it ignores both the plain language of section 131E-85 and the broad deference this Court affords to hospital boards in making staff privileges determinations. As our decisions in Cameronand Claycombmade clear, section 131E-85 requires that such decisions be (1) reasonably related to the hospital's operation; (2) rationally compatible with the hospital's responsibility; and (3) not based on irrelevant considerations. We are not persuaded by Dr. Kohn's insistence that FirstHealth is basing its determinations on irrelevant considerations because a requirement that residencies be accredited by the ACGME effectively bars physicians not trained in the U.S. or Puerto Rico from obtaining staff privileges. The plain language of section 131E-85 provides that "education, training, [and] experience" are relevant considerations in these determinations, and our review of the record confirms that the ACGME functions as an objective measure of those statutorily enumerated criteria that FirstHealth relies on to assure its hospital is staffed with well-trained, high-quality physicians. The gravamen of Dr. Kohn's complaint is that he would prefer that FirstHealth apply a different standard to his application, but that is not what our law requires. Therefore, because FirstHealth's residency requirement is reasonably related to the hospital's operation, rationally compatible with the hospital's responsibilities, and consistently applied based on considerations made relevant by the plain language of section 131E-85, we hold that the trial court did not err in granting FirstHealth's motion for summary judgment.
B. Monopolization and attempted monopolization
Dr. Kohn argues next that the trial court erred in granting FirstHealth's motion to dismiss his second complaint's claims for monopolization and attempted monopolization. We disagree.
When considering a motion to dismiss under Rule 12(b)(6) of the Rules of Civil Procedure,
[t]he question for the court is whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not. The court must construe the complaint liberally and should not dismiss the complaint unless it appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim which would entitle him to relief. This Court must conduct a de novoreview of the pleadings to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct.
Leary v. N.C. Forest Prods., Inc.,157 N.C.App. 396, 400, 580 S.E.2d 1, 4 (citations and internal quotation marks omitted), affirmed,357 N.C. 567, 597 S.E.2d 673 (2003).
Here, Dr. Kohn argues that his complaint stated a valid claim for violation of section 75-2.1 of our General Statutes, which makes it unlawful "for any person to monopolize, or attempt to monopolize, or combine or conspire with any other person or persons to monopolize, any part of trade or commerce in the State of North Carolina." N.C. Gen.Stat. § 75-2.1 (2013). Specifically, in both of his complaints, Dr. Kohn has contended that FirstHealth
has a monopoly on the provision of surgical care and other care requiring hospitalizations that extends to the entirety of Moore County, North Carolina, and beyond, on the basis of the essential facility doctrine, in that its hospital has a natural monopoly and its hospital facilities are essential for the practice of physicians and surgeons who perform medical procedures that are required to be performed in hospitals.
In his appellant brief, Dr. Kohn suggests that the essential facility doctrine creates an automatic and absolute duty that prohibits FirstHealth from denying admission to competitors of its existing staff members on a discriminatory basis. In support of this argument, Dr. Kohn relies heavily on an antitrust law treatise and also cites the United States Supreme Court's prior holdings in United States v. Terminal R.R. Ass'n of St. Louis,224 U.S. 383, 56 L.Ed. 810 (1912) and Associated Press v. United States,326 U . S. 1, 89 L.Ed.2013 (1945).
However, this argument is without merit insofar as it fails to cite any controlling or relevant authority to support Dr. Kohn's claim that the essential facility doctrine applies in this case or even exists as a distinct legal concept under North Carolina law. Indeed, Dr. Kohn appears to borrow the term "essential facility" from Chapter 62 of our General Statutes, which governs public utilities. SeeN.C. Gen.Stat. § 62-110(f1) (2013). However, this Court's prior holding in Kohn Imade absolutely clear that FirstHealth is not a public utility. See--- N.C.App. at ----, 747 S.E.2d at 397. Consequently, the essential facility doctrine cannot apply to the present facts. We therefore hold that the trial court did not err in dismissing Dr. Kohn's claims for monopolization and attempted monopolization.
C. Discrimination on the basis of national origin and ethnicity
Finally, Dr. Kohn argues that the trial court erred in granting FirstHealth's motion to dismiss his second complaint's claim for discrimination on the basis of national origin and ethnicity. We disagree.
It is well established under North Carolina law that the doctrine of res judicataprecludes a litigant from bringing a second lawsuit in order to re-litigate issues "that were or should have been adjudicated in the prior action." Whitacre P'ship v. Biosignia, Inc.,358 N.C. 1, 15, 591 S.E.2d 870, 880 (2004) (citation omitted). The doctrine applies when there is: "(1) a final judgment on the merits in an earlier suit, (2) an identity of the causes of action in both the earlier and the later suit, and (3) an identity of the parties or their privies in the two suits." Moody v. Able Outdoor, Inc.,169 N.C.App. 80, 84, 609 S.E.2d 259, 262 (2005). Under res judicata,"all matters, either fact or law, that were or should have been adjudicated in the prior action are deemed concluded." Thomas M. McInnis & Assocs., Inc. v. Hall,318 N.C. 421, 428, 349 S.E.2d 552, 556 (1986) (citations omitted). "[S]ubsequent actions which attempt to proceed by asserting a new legal theory or by seeking a different remedy are prohibited under the principles of res judicata," Bockweg v. Anderson,333 N.C. 486, 494, 428 S.E.2d 157, 163 (1993), because "the judgment in the former action or proceeding is conclusive in the latter not only as to all matters actually litigated and determined, but also as to all matters which could properly have been litigated and determined in the former action or proceeding." Fickley v. Greystone Enters., Inc.,140 N.C.App. 258, 260, 536 S.E.2d 331, 333 (2000) (citation omitted). Therefore, "[a] party is required to bring forth the whole case at one time and will not be permitted to split the claim or divide the grounds for recovery [.]" Rodgers Builders, Inc. v. McQueen,76 N.C.App. 16, 23, 331 S.E.2d 726, 730 (1985), disc. review denied,315 N.C. 590, 341 S.E.2d 29 (1986).
In the present case, we easily conclude that all three of the elements required to trigger the application of res judicataare satisfied. As to the first element, our opinion in Kohn Iconstituted a final judgment on the merits of Dr. Kohn's claim against FirstHealth under the public utility doctrine, as well as his claim for violation of NAFTA, which Dr. Kohn did not appeal after the trial court dismissed it with prejudice. As to the third element, there is an identity of parties here because both Dr. Kohn's first complaint and his present lawsuit were brought against FirstHealth.[3] The second element is also satisfied, given that Dr. Kohn's claim for discrimination on the basis of national origin and ethnicity was not included in his first action but arises from the same facts and circumstances-i.e.,FirstHealth's denial of his application for staff privileges-that all the claims in his first action were predicated upon. Thus, unlike his claims for monopolization, attempted monopolization, and arbitrary and capricious conduct, which were brought in Dr. Kohn's first action against FirstHealth but were voluntarily dismissed before the case reached a final judgment on the merits, Dr. Kohn's claim for discrimination in the present case is barred by res judicata. See, e.g., Rodgers Builders, Inc.,76 N.C.App. at 23, 331 S.E.2d at 730. Accordingly, we hold that the trial court did not err in granting FirstHealth's motion to dismiss Dr. Kohn's claim for discrimination on the basis of national origin and ethnicity.
AFFIRMED.
Judges STEELMAN and McCULLOUGH concur.
Report per Rule 30(e).
Judge STEELMAN concurred in this opinion prior to 30 June 2015.
Opinion
Appeal by Plaintiff from order entered 30 June 2014 by Judge James M. Webb in Moore County Superior Court. Heard in the Court of Appeals 22 April 2015.

We note here that there is some conflict between the record in the present case and the procedural history given in this Court's prior opinion addressing Dr. Kohn's earlier lawsuit against FirstHealth. As discussed infra, in Kohn v. FirstHealth of the Carolinas, Inc., ---N.C.App. ----, 747 S.E.2d 395 (2013) ("Kohn I "), we rejected Dr. Kohn's argument that the trial court had erred in dismissing his claim that FirstHealth violated our State's public utility doctrine in denying his application for staff privilges. Our opinion in that case stated that FirstHealth "did not accept [Dr. Kohn's 1999 application for staff privileges] because he lacked certification by the American Board of Obstetrics and Gynecology."Id. at ---, 747 S.E.2d at 396. In the present case, although Dr. Kohn reiterates this claim, the only evidence in the record to support it is his own deposition testimony that after FirstHealth returned his 1999 application, an unidentified female employee in the hospital's medical staff office told him that the reason for his rejection was his lack of board certification. On the other hand, the record in this case does include a copy of the 3 November 1999 letter that FirstHealth sent Dr. Kohn which makes no reference whatsoever to board certification but instead explicitly states that his application was denied because his McMaster University residency was not accredited by the ACGME.

According to FirstHealth's Medical Staff Services and Regulatory Director Jeanenne Watters, FirstHealth recognizes LCGME approval as the functional equivalent to ACGME approval, and thus "[f]or physicians who completed residency training prior to 1981 [when LCGME was renamed ACGME], our office confirms whether residency training was approved by the same body." Watters conducted a review of every physician who completed their residency before 31 December 1981 and joined Moore Regional Hospital's medical staff after the ACGME requirement was adopted in 1995. Watters found that there were a total of seven such physicians, each of whom "completed a residency training program approved by the ACGME, even if that was prior to the 1981 name change."

We note that although Kohn I also involved claims by two of Dr. Kohn's patients who do not appear as parties in this case, for purposes of res judicata, "[i]t is not necessary that precisely the same parties were plaintiffs and defendants in the two suits; provided the same subject in controversy, between two or more of the parties has been directly in issue in the former suit." Green v. Dixon, 137 N.C.App. 305, 309, 528 S.E.2d 51, 55 (citation and internal quotation marks omitted), affirmed per curiam, 352 N.C. 666, 535 S.E.2d 356 (2000).